THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAUL POWELL, Defendant-Appellant.

First District (4th Division)    No. 61752

Opinion filed April 28, 1977.

Harry J. Busch and Patrick A. Tuite, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

Paul Powell, an attorney at law, was indicted for the offense of bribery in indictment number 73-6348, and for the offense of bribery, solicitation and attempt in indictment number 73-6349. Both indictments were

consolidated for trial, and the evidence offered at trial was the testimony of Officer Martinez of the Chicago Police Department, certain tapes and transcripts of taped conversations between Officer Martinez and Paul Powell, as well as the testimony of Paul Powell (defendant). The trial was held without a jury. Powell was found guilty of bribery in indictment number 73-6348 and solicitation in indictment number 73-6349. He was acquitted of all other charges and sentenced to two years conditional discharge and a $4,000 fine on the bribery conviction, and two years conditional discharge on the solicitation conviction.

The issues presented for review are (1) whether the defendant's conduct amounted to bribery, (2) whether there was sufficient evidence to sustain the conviction of the defendant for bribery as alleged, (3) whether there was a fatal variance between the proof adduced at trial and the allegations in the bribery indictment, (4) whether the indictment for solicitation charged an offense with the specificity required by law, and (5) whether there was sufficient evidence of solicitation as alleged to sustain the conviction. The pertinent facts follow.

On July.11, 1973, Awilda Torres was allegedly stabbed several times by Juanita Guevara. Juanita Guevara was arrested on July 14, 1973, and her cause was set for preliminary hearing in Branch 24 of the circuit court of Cook County for July 26, 1973. She retained Paul Powell as her attorney and on July 26 he appeared for her in court. On that date Officer Jose Martinez appeared and asked the court for a continuance since the victim of the stabbing was in the hospital and could not appear to testify. The case was continued until August 20, 1973.

As Officer Martinez left the courtroom on July 26, Powell approached him and asked to see the arrest report in the officer's file. The officer handed a copy of the report to him. Powell then told the officer the parents of the girl charged with the stabbing were intending to go to the district police station and sign a complaint against the victim, Awilda Torres, charging her with the battery of Rose Guevara, the sister of Juanita Guevara.

According to Powell, Martinez told Powell the case was closed and there would be a great deal of paper work, and asked Powell for $100 to take the complaints from the parents of Juanita Guevara. Powell told the officer it was not possible to pay $100, since Powell himself was not being paid that much. Powell left the officer with the understanding the Guevara family would contact the officer about filing a complaint, but no agreement was reached concerning the $100 asked for by Martinez. Later in the day Martinez in fact saw Juanita Guevara at the police station. He spoke to her father who wanted to file a complaint against Awilda Torres for striking Rose Guevara.

According to Martinez, on July 26 Powell asked about the complaint

and mentioned that the Guevaras were planning to swear out complaints against Awilda Torres. Powell then gave Martinez a business card and asked him to call in a couple of weeks. Powell said, "I'll give you a bill now and a bill in two weeks." The officer took the word "bill" as slang to mean $100.

Officer Martinez reported this incident to his superior officers and then to the state's attorney's office, where he was equipped with a recording device to be used on the date of the next court appearance, August 20, 1973. This device was attached to the officer's body in such a way as to be concealed from outside view. It was turned on at the discretion of the officer and was, at all times, under his control.

On August 20, 1973, during a recess of the court, Powell and Martinez had a discussion. According to Powell, Martinez was expecting some money and told Powell that Martinez could get the complainant to drop the charges against Powell's client if Powell would pay Martinez $250 for doing so. Powell was taken by surprise and told Martinez to go back in the courtroom for a few minutes, and Powell would think about it. Later, in another conversation between Powell and Martinez, Powell, while attempting to clear up the discrepancy over whether the officer wanted the money to do the paper work of filing a complaint or for getting the complaining witness to drop the charges, inquired of Martinez, "I'll give you $250 and you'll get them to drop the case, is that right?" and Martinez answered "Yes." The men parted and the case, when called, was continued until October 18, 1973. When the parties left the courthouse, Powell instructed his client and her family to locate Officer Martinez and swear out a complaint.

According to Officer Martinez, Powell offered the officer $250 if he could get the complainant to drop the charges. The officer asked how he was supposed to do that, to which Powell replied the officer could take a complaint from Juanita Guevara's parents alleging the complainant had injured their daughter, Rose, in the same incident out of which the battery charge grew. Then Officer Martinez could use the complaint as leverage to get the charges dropped against his client, Juanita. In connection with this conversation Powell gave the officer a hospital bill which purported to show Rose Guevara had in fact been in the hospital on July 17, 1973.

On the next court date in the case of People v. Guevara, on October 18, 1973, arrangements were made for Officer Martinez to again have recording equipment on his person and for Martinez to lie to the court, under oath, concerning the Torres family's unwillingness to prosecute. Martinez said the whole idea and suggestion to give perjured testimony came from the chief of the state's attorney's Criminal Division. This perjured testimony came to light later at Powell's trial when Martinez admitted his perjury at the Guevara trial.

Powell said on October 18, 1973, he and his client were ready for, and demanded trial. Powell was prepared with 11 witnesses for the defense. But, while the Torres family waited in the state's attorney's office, Officer Martinez, under oath, falsely told the judge the Torres family did not wish to prosecute. As a result, the case was stricken off the call and Powell and Martinez left the Criminal Court Building. There is no indication the judge had any knowledge of the officer's perjured testimony, and neither did Powell. He was ready for trial. Later, during the trial of Powell, Officer Martinez admitted Powell never told the officer not to bring witnesses to court. Coincidentally, Martinez testified it is not a rule of the Chicago Police Department that an officer bring witnesses to court.

Once outside the courthouse, Powell and Martinez again conversed. According to Martinez, Powell tried to avoid the officer, but finally the officer followed Powell to Powell's auto, which was parked a short distance from the courthouse. After both men entered the car, Powell drove around the block, and as he did so he threw $250 on the floor of the car. He asked Martinez if that was all right, and the officer said it was and assured Powell the case would not reappear in court. Powell then pulled to the curb. As Officer Martinez got out of the car, he handed Powell a grand jury subpoena relative to the alleged instant bribery, and then secretly turned on the hidden recorder. Powell told the officer he was blowing Powell's license to practice law and started to cry. Martinez ignored Powell's pleas and left Powell to return to the state's attorney's office.

According to Powell's testimony, on October 18, while outside the courthouse, Martinez followed Powell and demanded $250. Powell said he did not promise anything to Martinez and told Martinez to leave him alone. Powell ran to his car and got in. However, Martinez followed, entered the car before Powell could lock the door, and asked again for the money, while making threatening gestures. Powell became afraid of the officer and did not know what to do. In order to get rid of Martinez, Powell threw $250 on the floor of the car. Martinez picked up the money and handed Powell a grand jury subpoena.

Powell points out the fact that Martinez had the tape recorder off during the time between Officer Martinez' false testimony in court and the time Martinez handed the grand jury subpoena to Powell.

The record reveals a transcript of the recorded conversation only after Martinez served the subpoena on Powell.

At the close of all the evidence, the trial judge, sitting without a jury, found Paul Powell guilty of bribery and solicitation. Defendant then proceeded to this appeal of the judgments.

Defendants's first contention is he was not proven guilty of bribery as charged.

■■ Bribery, in Illinois, is the tendering of money to a public employee to influence the performance of an act related to the public employee's official function. (Ill. Rev. Stat. 1973, ch. 38, par. 33—1(a).) It is not bribery to pay money to a public employee unless it is proven the defendant intended to influence the public employee in the performance of his official duties.

The charge, leading to defendant's bribery conviction, alleges the defendant paid money and intended to influence Officer Martinez in the securing of witnesses, and investigation and prosecution of a criminal case entitled People v. Guevara. Defendant denies intending to influence Officer Martinez in either the securing of witnesses or investigating the case, and claims it is not the official duty of a police officer to determine whether or not to prosecute a criminal case.

As to the charge of influencing Officer Martinez in the securing of witnesses, the indictment does not allege whether Powell tried to influence Martinez to secure witnesses or to refrain from securing witnesses, but it is of no consequence since the record reflects Powell did neither.

On cross-examination of Martinez the following took place:

"Q. At no time did Mr. Powell ever tell you not to bring witnesses to court, did he?

A. No, he did not."

There is also no evidence of whether Powell asked Martinez to bring witnesses to court. In addition, Officer Martinez testified the subpoenaing or bringing witnesses to court was not related to the performance of his official duties, and there is no rule of the Chicago Police Department requiring him to bring witnesses to court.

As to the charge of influencing Officer Martinez in the investigation of the case of People v. Guevara, Martinez testified that with Juanita Guevara in custody, the case was considered closed as early as July 19, 1973, and the word "closed" was stamped across his report. Since Powell never entered the case until July 26, 1973, a time after the investigation by Martinez was complete, the defendant could not possibly influence such investigation.

In regards to the charge of influencing Martinez in the prosecution of People v. Guevara, nowhere in the State of Illinois is a policeman given the power or authority to prosecute a criminal case. The duty to prosecute offenses in this State lies with the state's attorney of the county where the offense is alleged to have occurred. Ill. Rev. Stat. 1973, ch. 14, par. 5.

■■ One cannot be convicted of bribery for offering money to someone to do something that person has no authority to do. The act sought is not related to the performance of an official act of the policeman. Martinez could not prosecute the case of People v. Guevara

and therefore he could not be influenced in the prosectuion of that case as the indictment alleges.

Inasmuch as there is no evidence that Paul Powell tendered money to Jose Martinez to influence Martinez in either securing witnesses or investigating or prosecuting the criminal case entitled People v. Guevara, this court will reverse the bribery conviction.

We now turn to an examination of the allegation of solicitation.

The defendant testified that prior to any court appearance, his client made several attempts to file a criminal complaint, at the local police station, against the complainant, Awilda Torres. But, no one would accept the complaint. Not until they were in court did the defendant approach Martinez for the first time. They discussed the possibility of Powell's client swearing out a criminal complaint against the complainant, and Martinez allegedly asked for $100 for doing the extra paper work in accepting the complaint. On the day of a subsequent court hearing in People v. Guevara, Martinez is alleged to have said for $250 he would get the complainant to drop the charges.

As noted above, the evidence presented by the prosecution consists chiefly of the testimony of Martinez and tape recordings.

The fact of Martinez being an admitted perjurer must be examined along with the weight given the recordings, as Martinez had complete control over what parts of the conversations were taped and what portions were not. The on-off switch of the recorder was in Martinez' right pocket, and could be turned off and on as Martinez pleased. This resulted in the taped conversations being taken completely out of context, and only of Powell. As if to justify this method of discriminate taping, he testified he was advised by an assistant state's attorney to turn on the recorder only when necessary. It is significant that the recorder was turned off during the crucial conversation which took place immediately prior to when the alleged bribery money was transferred. Powell maintains Martinez demanded the money and made threatening gestures. Martinez admits Powell tried to avoid the confrontation, as he told Martinez not to get too close and to come to Powell's office later in the day. Martinez admittedly refused to withdraw his persistence, and yet waited until Powell threw the $250 on the floor before turning the recorder on.

Since the tape recorded conversations were taken out of context and are admittedly incomplete, to be reliable they must be supported by credible testimony that the unrecorded conversations were consistent with the tapes. This requires a determination of the weight to be given to the testimony of Martinez.

At the outset, Martinez is a confessed perjurer, and perjury is most damaging to one's credibility.

Martinez explains he was instructed to lie to the court at the October 18 hearing in the interest of obtaining a bribery conviction against the defendant, although the so-called bribery had not yet occurred.

The evidence discloses (1) a tape recording device was placed on Officer Martinez, (2) perjury was admittedly given by the officer to the court while the defendant was ready, with 11 witnesses, for trial, (3) a grand jury subpoena was prepared in advance and held by Martinez, and (4) psychological pressure was applied by Officer Martinez in an attempt to elicit the alleged bribery money from Powell. All of these events transpired prior to the alleged bribery. The policeman's forcing his way into Powell's car and persistent demand for money until Powell threw $250 on the floor, indicating his reluctance at being forced to pay, is proof that he was not the moving party and did not solicit the policeman, but had been solicited by the policeman throughout.

At the time of the alleged bribery, Martinez could have arrested Powell (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c)) and charged him with bribery, but did not. Martinez said the assistant state's attorney told him not to arrest Powell. Instead, Powell was served with a grand jury subpoena, while a hidden recorder was turned on. The added fact that only selected parts of conversations were recorded, cast a pall over Martinez' entire testimony.

The Illinois Supreme Court (*People v. Sheppard* (1949), 402 Ill. 347, 83 N.E.2d 587) pronounced it is the duty of a court to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt, and where the entire record leaves the reviewing court with grave and substantial doubt of guilt the conviction should be reversed.

The defendant claims the State failed to prove beyond a reasonable doubt the alleged solicitation was done with the intent to obstruct the prosecution of any specific person.

The solicitation section of the Illinois Criminal Code provides:

"A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense." Ill. Rev. Stat. 1973, ch. 38, par. 8—1(a).

The obstructing justice section of the Illinois Criminal Code provides, in pertinent part:

"A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:

(a) Destroys, alters, conceals or disguises physical evidence * * *." Ill. Rev. Stat. 1973, ch. 38, par. 31—4.

■■ As the defendant is charged with solicitation to commit obstruction of justice, it is clear proof must establish he intended justice be obstructed. Further, proof must establish he intended to prevent the

prosecution of a specific person, because intent that obstruction of justice was committed cannot be proved here, if intent to prevent the prosecution of a specific person is not proved on trial. In other words, examination of the entire record reveals no proof, nor even allegation, of any intent to obstruct justice, absent the evidence offered which concerns the defendant's intent to prevent his own prosecution. Therefore, intent to prevent his own prosecution must be proven beyond a reasonable doubt, or defendant's conviction of solicitation must be reversed.

Section 2—16 of the Illinois Criminal Code defines prosecution as:

"* * * all legal proceedings by which a person's liability for an offense is determined, commencing with the return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal." Ill. Rev. Stat. 1973, ch. 38, par. 2—16.

■■ Inasmuch as the only witness in the solicitation charge against Powell was Martinez, whose credibility is highly suspect due to his admitted perjury, and after a careful examination of the entire record, we hold the prosecution failed to sustain the burden of proving the defendant guilty beyond a reasonable doubt as to the charge of solicitation, and the conviction must be reversed.

For the foregoing reasons the judgments of the circuit court of Cook County convicting the defendant of bribery and solicitation are hereby reversed.

Both judgments are reversed.

LINN and ROMITI, JJ., concur.