THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SERITA GRAY, Defendant-Appellant.

Fourth District   No. 4—85—0744

Opinion filed August 26, 1986.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On September 16, 1985, Gray was found guilty under count II of a three-count information charging her with obstructing justice in violation of section 31—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 31—4(a)) in that she obstructed the prosecution of Jake Walker and Otis Frazier for the murder of Eugene Byers. Gray was sentenced to 18 months' probation. As a condition of probation, she was ordered to spend 120 days in jail with credit for time served.

Gray raises two issues on appeal: first, that the trial court erred when it found Gray guilty beyond a reasonable doubt of obstructing justice; and second, that her recantation of the false information four hours after the last assertion of that information is a valid defense.

Decatur police suspected Walker and Frazier of being responsible for the crime and interviewed Gray, who had been living with Walker, Frazier, and Patricia Jones, on January 4, 1985. The police conducted three interviews with Gray: one shortly after midnight; the second at 2:44 p.m.; and the third at 6:40 p.m.

During the first two interviews, Gray stated that she had no knowledge of Walker's or Frazier's whereabouts on the night of the murder or of either one's possession of any type of weapon. The third interview revealed Gray's initial inconsistent statements when she stated that she had seen both Walker and Frazier on the night of the murder when they left the house saying they were "going to make a hustle." They returned one or two hours later with some money that they said they had gotten while gambling. Gray also stated that the next day Frazier told her that he hit a man in the

head with a stick and stole $100. Gray then executed a consistent written statement.

In two subsequent interviews, Gray maintained that she had told the truth during the third session. However, when confronted with specific statements she had made, she stated she did not remember making them and if she had done so, she was lying. Gray also stated that she would not testify against Walker and Frazier because they had done nothing to her, that she was pregnant with Walker's child, and that Frazier was her cousin.

■ To sustain its burden of proof on the obstructing-justice charge, the prosecution had to prove: (1) that Gray knowingly furnished false information, and (2) that it was furnished with the intent to obstruct the prosecution of Walker and Frazier. (See *People v. Shaw* (1978), 63 Ill. App. 3d 227, 228, 379 N.E.2d 949, 950.) The offense of obstruction of justice is not dependent on the outcome of the prosecution alleged to have been obstructed. (*People v. Briddle* (1980), 84 Ill. App. 3d 523, 405 N.E.2d 1357, *cert. denied* (1981), 450 U.S. 986, 67 L. Ed. 2d 823, 101 S. Ct. 1527.) On appeal, a presumption of validity accompanies a finding of guilty. Resolution of factual disputes and the assessment of the credibility of witnesses is for the trier of fact, and a reviewing court will not reverse a conviction unless evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. *People v. Molstad* (1984), 101 Ill. 2d 128, 461 N.E.2d 398.

■ Furnishing false information is not limited to the affirmative act of making false statements. A defendant may be in violation of section 31—4(a) if his false answers to police questioning go beyond the limits of his own involvement in the crime charged, either directly or by accountability, and, therefore, beyond his own denial of wrongdoing. Beyond those limits, a defendant who has voluntarily agreed to make a statement has no privilege to intentionally mislead police as to crimes of others which are not inextricably connected with the charge against him. (*People v. Brooks* (1977), 51 Ill. App. 3d 800, 367 N.E.2d 236.) *Brooks* sets out the proposition that furnishing false information includes, but may not be limited to, withholding information or providing information that intentionally misleads. 51 Ill. App. 3d 800, 805, 367 N.E.2d 236, 239.

There were no challenges to the voluntariness of the three statements. If the statement is voluntary, then *Brooks* requires that the defendant not intentionally mislead or withhold information regarding the crimes of others. The intent of the statute seems to include a requisite openness and citizen involvement in solving crimes

once a citizen has voluntarily agreed to talk to police. This is a legitimate statutory purpose.

■ The statute, on its face, requires more than the giving of false information to the police. It requires that when the false information is given, it must be given with the intent to prevent the prosecution and with the knowledge that the information was untrue. However, the state of mind or intent need not be proved by direct evidence, but can be inferred from the proof of surrounding circumstances. *People v. Shields* (1955), 6 Ill. 2d 200, 127 N.E.2d 440; *People v. Shaw* (1978), 63 Ill. App. 3d 227, 228, 379 N.E.2d 949, 950.

The requisite intent in an obstructing-justice charge is established at the time the original false information is given and not at the time of its recantation. In the subsequent interviews with Gray, she related to police that the information furnished in the third session had been the truth, but that she would not testify against Walker or Frazier because they had done nothing to her, that she was pregnant with Walker's child, and that Frazier was her cousin. This case tracks closely with *People v. Sumner* (1976), 40 Ill. App. 3d 832, 354 N.E.2d 18. In *Sumner,* the defendant was convicted for obstructing justice when she destroyed physical evidence found in the bloody clothes of her son. This evidence would have linked him to a murder. The defendant knew that her son was a convicted felon and that she seemed worried that he might be prosecuted further. From this evidence, the jury could infer that the defendant believed that her son had inflicted bodily harm on the victim, whose name appeared on the documents, and that her son would be likely to be prosecuted for this offense. The finding of these objects would obviously be strong evidence in any prosecution of her son, and the jury might reasonably infer that she believed that to destroy these items would prevent his being prosecuted. 40 Ill. App. 3d 832, 835-36, 354 N.E.2d 18, 22.

In the present case, a similar relationship appears to exist. One of the defendants in the murder was Gray's cousin; the other allegedly the father of her unborn child. This provides a reasonable inference that Gray believed that withholding the evidence would prevent the prosecution of Walker and Frazier.

■ The fact that Gray furnished false information to the police coupled with her intent, which can be inferred from the surrounding circumstances, provided sufficient evidence for the trial court to find Gray guilty of obstructing justice beyond a reasonable doubt.

Gray's second contention, and the distinguishing element in this

case, is that Gray came forward with the "correct" information 18 hours after the initial session and only 4 hours after the second session. Unlike *Sumner*, this poses a different scenario. The *Sumner* defendant could not reconstruct the destroyed physical evidence. Gray states, however, that she recanted her previously false story in a relatively short time period.

Gray contends that an analogy to the perjury statute sheds some light on this situation. The perjury statute specifically provides that where "contradictory statements are made in the same continuous trial, an admission by the offender in that same continuous trial of the falsity of a contradictory statement shall bar prosecution therefor under any provisions of this Code" (Ill. Rev. Stat. 1983, ch. 38, par. 32—2(c).) Gray further contends that a similar remedy read into the obstructing-justice statute would further a just result. Two statutes on the same subject matter and parts of a comprehensive statutory scheme should be read in reference to each other to determine legislative intent and avoid injustice. (*People v. Scheib* (1979), 76 Ill. 2d 244, 390 N.E.2d 872.) Both crimes are "interference" crimes. One specifically offers a recantation defense and the other does not. Courts do not have the power to legislate and must interpret the law as announced by the legislature. (*People ex rel. Roan v. Wilson* (1950), 405 Ill. 122, 90 N.E.2d 224.) It would appear that if one statute carries an express defense to its provisions and another does not, then the intent of the legislature was not to have such a defense available. The legislative intent can also be gleaned from the committee comments to section 31—4. The comments read: "The penalty range of section 31—4 is sufficiently broad to permit the punishment to fit the seriousness of the offense." Ill. Ann. Stat., ch. 38, par. 31—4, Committee Comments, at 320 (Smith-Hurd 1977).

■■ The fact that both are termed "interference" crimes is not conclusive as to whether both should carry the same defenses, explicit or implicit. The physical circumstances of the situations in which these offenses would occur demonstrate a second difference in application of the statutory sections. The section 32—2 perjury situation, which would allow the defendant to invoke the subsection (c) defense, would occur at trial. This is a more controlled environment. The circumstances surrounding a police murder investigation may not be nearly as controlled and its outcome, successful or otherwise, may be determined in that 4- to 8-hour period. There may be, however, based upon the particular facts of each case, a situation where a recantation within a short period of time would permit the trier of fact to find the defendant not guilty of an obstructing-justice charge.

The determination as to whether there has been an effective recantation within a reasonable time period should be tried in the first instance by the trier of fact as that determination will depend in part upon the facts of the particular case. Considering the four-hour time lapse before retraction of the false information in this case, the trial court was correct in finding the defendant guilty of the crime as charged.

Affirmed.

WEBBER and GREEN, JJ., concur.