THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEVIN HOLLINGSEAD, Defendant-Appellant.

Fourth District No. 4—90—0537

Opinion filed March 14, 1991.

Fuller, Hopp, McCarthy & Quigg, of Decatur (Glenn O. Fuller, of counsel), for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant appeals his convictions for official misconduct and obstructing justice. We affirm.

On April 6, 1990, a grand jury indicted defendant on three counts of official misconduct and one count of obstructing justice. Count I charged defendant with official misconduct in that as a police officer on duty for the City of Decatur, Illinois, defendant knowingly per-

formed an act which he knew was forbidden by law to perform. (Ill. Rev. Stat. 1989, ch. 38, par. 33—3(b)).) The act defendant knew he was forbidden by law to perform provided the basis for count II, obstructing justice. (Ill. Rev. Stat. 1989, ch. 38, par. 31—4(a)).) Counts I and II alleged that defendant, with the intent to obstruct the defense of Andre Peck, knowingly disguised physical evidence, planted false evidence, and furnished false information, by placing a quantity of white powder on Peck. Counts I and II also alleged that defendant represented to those present, including police officers, that the substance he placed on Peck was taken from Peck, and was cocaine or a controlled substance, while knowing that the substance was not on Peck and was not cocaine or a controlled substance. Counts III and IV of the indictment charged defendant with official misconduct based upon the commission of an act of disorderly conduct. Defendant waived his right to a jury, and the trial court found him guilty of counts I and II. The court found defendant not guilty of counts III and IV, and they are not involved in this appeal.

At defendant's trial, Andre Peck was the first to testify. Peck testified that on March 2, 1990, he was walking with his brother and a friend shortly after midnight in the vicinity of Marietta and Warrent Streets in Decatur, Illinois. At the time, Peck was on parole for theft and burglary and was out past his curfew. Peck noticed a white Cadillac parked on Marietta, and as he walked by, a person in the car asked him for a cigarette. As Peck looked to see if he knew anyone in the car, a police car pulled up and turned its spotlight on. Peck became scared because he was out after his curfew, and he began to run. The police apprehended Peck and found a bag of cocaine near him. The police then took Peck to a squad car and searched him on the hood of the car. About 10 or 12 people gathered around and watched. As Peck was being searched, he saw an officer, defendant, go to the trunk of the car and come out with a bag containing a white substance. Peck had seen cocaine before and believed what the officer pulled out of the trunk was cocaine.

After the officer took the bag of white substance from the trunk, he walked around to the back of Peck, tugged Peck's back pocket, and said "look what we got here." At this time, the other officers had just completed their search. Peck became hysterical and shouted to the officers that the substance was not his. Defendant never told Peck the bag of white powder was a joke, and the incident did not seem to be done in a joking manner. Moreover, nobody laughed, including the police officers. Peck was subsequently arrested and charged with the offense of being a pedestrian in the roadway.

Don Brooks, a sergeant with the Decatur police department, also testified. Brooks spoke to defendant on March 8, 1990, and defendant told him that the incident was a joke, was intended to be a joke, and that "they had done it before." Defendant did not describe who "they" were. When Brooks later asked defendant if "they" do this all the time, defendant replied: "[N]o, this was just a joke, ***. You get in a car, hold up a plastic bag and say, look what I found ***." Brooks testified that he had not heard of this happening before and could only surmise as to what defendant meant by stating such things have happened. While Brooks thought defendant believed such actions were common practice, it was not the practice of the Decatur police force at all to do this. Brooks also testified that an officer cannot purport to find evidence on a person if he did not actually find it on the person.

On cross-examination, Brooks testified that when officers discover controlled substances on suspects, they often hold the substance up and say "look what I have found." Brooks also stated that defendant had been given permission to carry the bag of white powder, "pseudo-cocaine," to train his dog. Brooks did not recall ever telling a suspect that his fingerprints were found at the scene when they in fact were not, but he has falsely told a defendant that a codefendant had confessed to induce the defendant to confess. Brooks was never disciplined for such conduct or charged with official misconduct.

Next to testify was Mike Mowen, a police officer with the City of Decatur. Mowen testified that to train dogs with the pseudo-cocaine, it is not necessary to place the substance in bags to resemble the manner in which cocaine is packaged on the street. Dogs identify the substance by smell, not sight. On cross-examination, Mowen testified that the way the defendant's pseudo-cocaine was wrapped was approved by Officer Stephen Jostes, who trains the dogs and has the authority to try different techniques. Mowen also testified that it was not department policy for dog handlers to use pseudo-cocaine in an attempt to induce a confession from a suspect.

David Slade, a police officer with the City of Decatur, testified next. Slade conducts narcotic investigations and tests items which appear to be controlled substances. Slade conducted preliminary testing on the substance in the bags used by defendant on the night in question and found no trace of cocaine. Slade also testified that the manner in which defendant's pseudo-cocaine was packaged was similar to the way cocaine is packaged on the street. The pseudo-cocaine also has the appearance of cocaine itself. Slade further testified that the department's policy or law did not allow an officer to exhibit a bag appearing to contain cocaine to a person being searched, in an at-

tempt to elicit a confession, if that bag had not been found on that person.

Also testifying was Ed Smith, an officer with the City of Decatur police department. Smith arrived on the scene after hearing over the radio that an officer was chasing a suspect. Smith helped lead Peck to a squad car where Peck was searched. At this time there were many officers and people standing around. Smith and Officer Todd Walker searched Peck, who did not resist in any way. As Smith finished searching Peck, he heard someone say "look what I found." Smith looked up over his shoulder and saw defendant holding a bag, which appeared to hold several smaller bags of white powder. The substance in the bags appeared to be cocaine. Smith thought the bag had come from Peck's waist band. At this time Peck became agitated and yelled that the bag was not his and that the officers were framing him. Smith was surprised at what happened.

Smith further testified that he did not think the incident was funny, did not laugh, and the officers present did not laugh. Moreover, defendant never told Smith that he was only joking. Smith stated that, from his experience as a police officer, defendant's conduct is neither condoned nor promoted.

On cross-examination, Smith stated that after defendant held the bag in the air to show what he found, Smith did not immediately know he was joking. However, Smith did write in a police report that defendant's action was a joke and that defendant never implied that Peck was to be charged with an offense involving the substance. Smith clarified his police report at trial by stating that he came to this conclusion only after the fact, sometime after he got back to headquarters and "sorted things out." Smith also testified that at the time he turned to look at defendant holding the bag, defendant was laughing and snickering, but Smith still did not believe at the time that defendant was joking. Defendant never attempted to interrogate Peck in Smith's presence, and never asked that Peck be charged with the possession of a controlled substance.

Next to testify was Officer Michael Beck of the Decatur police department. Beck was working with Officer Smith on the night in question. Beck saw Officer Ziros chase and capture Peck. Other officers arrived, including defendant. Peck was taken to a car and placed on the hood for a search. During the search, Peck did not resist in any noticeable way. As the officers searched Peck, defendant went to the trunk of his car and opened it. Defendant then approached Beck with a "tackle box type container," opened it, and pulled out clear plastic bags containing several smaller plastic bags. The smaller bags held a

white powder. Defendant asked Beck, "[W]hy don't you tell him you found this on him?" Although defendant was laughing at this time, Beck did not know he was joking. Beck did not remember smiling when defendant made the suggestion to him, and did not believe he did. Beck thought the powder was cocaine and was surprised defendant asked him to do this. Beck told defendant he would not do it, and defendant turned around and walked back to his car.

Defendant then approached Peck from the rear while Smith was searching him and placed the bag near Peck's pocket. Defendant reached out and pulled out a bag similar to the one he had just shown Beck. Standing next to Peck, defendant held up the bag and said something like "look what I have found." Defendant was laughing as he did this. Peck became agitated and shouted that the bag was not his. Smith appeared shocked and Beck was surprised.

Later, as Beck and Smith headed for their car, Beck heard defendant say that he had taken the bag out for comparison purposes. When defendant said this, he was not smiling and Beck believed he was serious. Defendant never told Beck on the night the incident occurred that he was joking, and only told him this about a month later.

Nothing in Beck's training suggested that defendant's behavior was acceptable conduct under police department policy. Beck also testified that he had never handed a substance appearing to be cocaine to a suspect, while telling the suspect he found it on him, if the substance had not actually been found on the suspect.

On cross-examination, Beck admitted writing in his report that defendant had performed the act in a "joking manner" and was laughing when he showed Beck the bag. Beck testified that using the word "joking" in his report was a poor choice of words. Beck also admitted that after the incident, he concluded that defendant was joking at the time and had no intention of trying to arrest Peck on drug charges. Defendant never indicated by word that he was serious in finding the pseudo-cocaine on Peck and never asked Beck to arrest Peck.

Next to testify was Officer Todd Walker of the Decatur police force. During the search of Peck, Walker stood next to Peck and placed his left hand over Peck's right hand on the hood of the car. Peck did not resist or try to get away, and Walker did not feel threatened. After defendant held up the bag and said "look what I have found," Walker asked Smith, who had conducted the search, if Smith had found the cocaine on Peck. Smith appeared shocked and replied that he did not find the bag on Peck. Walker then asked defendant if he had taken the cocaine off of Peck. Defendant replied that he had

not taken the bag off of Peck and that the bag was pseudo-cocaine. Later at the scene, defendant called Walker and Beck to his car and told them that the substance was only pseudo-cocaine, that it was a joke, and was only meant to be a joke. Defendant also said at this time that he had used the pseudo-cocaine in an attempt to induce Peck to admit, or make a statement about, where cocaine was or had been dropped, if there was any.

On cross-examination, Walker testified that defendant never told him or any other officer that Peck should be arrested or charged. Walker did not know at the time defendant held up the bag that he was joking, and denied that he told other officers after the incident that he knew all along that defendant was joking.

Also testifying was Lieutenant Gordon Hannon of the Decatur police department. Sometime after the incident, defendant informed Hannon that he had gone up to Peck and told Peck that the bag was found on him. Defendant also told Hannon that the incident was a joke and that he had no intention of writing a report stating he had found cocaine on Peck.

The State rested, and the defense called Officer Prokopios Ziros of the Decatur city police to the stand. Ziros testified that he saw Peck get out of the car and put something white in his mouth. When Ziros caught Peck, he told him to get down on the ground and asked him to open his mouth. Ziros pulled a plastic bag out of Peck's mouth and placed it in his pocket. Ziros, however, did not tell any of the other officers about the plastic bag and later threw it away because he did not intend to charge Peck with anything more than a curfew violation and walking on the roadway.

The defense next called Stephen Jostes, a patrolman with the City of Decatur and the trainer for the canine unit. Jostes testified that it was proper for defendant to keep the pseudo-cocaine in his vehicle. Jostes also testified that while the dogs identify the pseudo-cocaine by smell, not sight, he had also used the substance wrapped in little bags, similar to the way defendant wrapped his, for about a month prior to the incident. However, Jostes testified that he never used the pseudo-cocaine wrapped in little bags to make someone confess by arresting him and telling him the substance was found on him. Defendant never asked Jostes for permission to package the pseudo-cocaine in such a manner in order to place it on a suspect, who would not know the substance was not real cocaine.

Next to testify was Jonathan Thomas, a police officer for the City of Decatur. Thomas testified that he spoke to Walker on three different occasions about the incident and Walker said each time that he

knew it was a joke. Thomas also testified that Walker told him he was surprised at what defendant had found because Peck had just been searched, but that Walker knew defendant was joking as soon as the incident occurred.

Next to testify was Officer David Stewart of the City of Decatur. Stewart discussed the incident with Walker after it occurred and Walker told him that he knew it was a joke, that it was performed in a ridiculous and outlandish manner, and that anyone there would have known it was a joke.

Finally, defendant testified. Defendant had been a law enforcement officer for over 10 years, 6 years as a deputy sheriff and correctional officer and 4½ years with the City of Decatur as a patrolman. On the night in question, defendant heard over the radio that Officer Ziros was pursuing a suspect who appeared to have placed a white powdery substance in his mouth. Defendant arrived on the scene after Peck was initially apprehended. Defendant knew the officers were looking for controlled substances and presumed they had not found any. When Officers Smith, Ziros, and Beck brought Peck to the hood of his car, the officers were excited. Defendant asked Ziros if they found the substance Peck was supposed to have and Ziros replied that they had not. Defendant further testified that Peck was very excited during the search, continued to come off the car, and was constantly told by Walker to keep his hands on the car and to calm down. Defendant realized that with people gathering around, the situation was getting worse, and did not believe the police really had any charges against Peck.

Defendant then went to the car and pulled out the package containing the pseudo-cocaine. Defendant asked Officer Beck to go up to Peck and show him the substance. Beck laughed "to the extent where he didn't want to do it" and said he would not do it. Defendant then said "watch this," walked over behind the suspect, held the bag up in his hand, and said "Oh, my gosh, look what I have ***." At this time, Smith and Walker looked stunned. After Peck became agitated and Walker and Smith looked at him, defendant realized they were not taking it as a joke. Because of this, and the thought that things could get worse, defendant put the bag back in his own pocket and stepped back. Walker asked defendant how he found the substance on Peck, and defendant told him it was pseudo-cocaine and a joke.

Defendant testified that his entire plan was to go up to the officers and relieve the tension, believing that his joke would get the officers laughing. The joke had nothing to do with Peck or the crowd, but was only for the officers. Defendant realized right away, however,

that the officers "weren't getting it," so he tried to tell them it was a joke. Defendant had nothing to do with Peck after this and did not ask the officers to arrest Peck for controlled substances.

Defendant denied telling Walker that the incident was an attempt to induce Peck to tell where the real cocaine was. However, defendant did admit telling Beck and Walker he took the pseudo-cocaine out of his car for comparison purposes. Defendant did not know what he would have compared the pseudo-cocaine to. Defendant also testified that he told Walker, Beck, and Smith that the entire incident was a joke. Defendant did not tell Peck the incident was a joke because he had informed the officers of such and had no reason to go back and upset Peck. Defendant also denied telling Sergeant Brooks that similar incidents happen. What defendant told Brooks was that officers at times show an empty bag to a suspect and say "look what I have here."

Defendant next testified that he did not tell Lieutenant Hannon that he informed Peck he found the bag on him. Defendant stood by his statement even though Hannon wrote defendant's alleged statement in his report shortly after their meeting.

The trial court found defendant guilty of counts I and II and stated:

"[B]ased upon my consideration of all the evidence and particularly certain portions of the testimony of Officer Brooks, Smith, Beck and Walker ***. I find that you planted the false evidence on the young man with the intent to obtain a confession and that this did obstruct his defense."

The court entered judgment only as to count I, official misconduct, regarding count II, obstructing justice, as an included offense, and sentenced defendant to 18 months of probation and 50 hours of community service as a condition of probation. Defendant did not file a post-trial motion and filed this notice of appeal.

On appeal, defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Specifically, defendant argues that his conviction should be reversed for two reasons: (1) the State failed to prove that he acted with the intent to obstruct the defense of Peck; and (2) the State failed to prove that he knowingly performed an act which he knew he was forbidden by law to perform. We disagree and affirm the trial court.

■■ ■ Initially, we note that defendant did not file a post-trial motion. When a defendant fails to comply with the statutory requirement to file a post-trial motion, an appellate court's review is limited to constitutional issues which have properly been raised at trial and

which can be raised later in a post-conviction hearing petition (Ill. Rev. Stat. 1989, ch. 38, par. 122—1), sufficiency of the evidence, and plain error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-91, 522 N.E.2d 1124, 1129-32, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) This rule applies in bench and jury trials. (*Enoch*, 122 Ill. 2d at 187-88, 522 N.E.2d at 1130.) Plain error is " 'a narrow and limited exception to the general waiver rule' (*People v. Pastorino* (1982), 91 Ill. 2d 178, 188), to be invoked only when the error alleged is 'so substantial as to deprive defendant of a fair trial' (*People v. Pastorino* (1982), 91 Ill. 2d 178, 189)." *People v. Szabo* (1986), 113 Ill. 2d 83, 94, 497 N.E.2d 995, 999.

■ Defendant first argues that the State failed to prove he acted with the intent to obstruct Peck's defense. An essential element in proving defendant obstructed justice is the intent to obstruct an individual's defense. (Ill. Rev. Stat. 1989, ch. 38, par. 31—4.) In arguing such, defendant notes the following: (1) defendant had his superior officers' consent to keep the bags of pseudo-cocaine in his car; (2) Beck and defendant both testified that defendant was laughing when he suggested that Beck tell Peck he found the bag on him; (3) all defendant's actions were done in the open, with no attempt to conceal, where the crowd and the officers could see what he was doing; (4) defendant told Walker immediately after the incident that he did not find the bag on Peck and that the substance was pseudo-cocaine; (5) defendant never told anyone to arrest Peck and never attempted to interrogate Peck; (6) Smith concluded after the incident that it was a joke; (7) Thomas testified that Walker told him he knew it was a joke; and (8) Beck knew that the incident was a joke and that defendant did not intend to charge Peck.

Defendant relies on two cases, *People v. Shaw* (1978), 63 Ill. App. 3d 227, 379 N.E.2d 949, and *People v. Powell* (1977), 48 Ill. App. 3d 723, 362 N.E.2d 1329, to support his argument. In *Shaw*, the defendant was awakened by police officers in her house sometime after midnight and was informed that the officers had arrest warrants for her brothers. Defendant had been drinking heavily that night and told the officers that her brothers were not at her house. After a quick look through her house, defendant again told the officers that her brothers were not there. Defendant then gave the officers consent to search her house, and the officers found the two brothers hiding in the basement. Defendant was convicted of obstructing justice, but the appellate court reversed and stated:

> "The defendant did give false information to the officers, but the statute requires more. It requires that when the false infor-

mation is given, it must be given with the intent to prevent the apprehension and with knowledge that the information was untrue. (Ill. Rev. Stat. 1975, ch: 38, par. 31—4(a).) The defendant's state of mind or intent can be inferred from proof of the surrounding circumstances. *People v. Baddeley* (1969), 106 Ill. App. 2d 154, 245 N.E.2d 593." (*Shaw,* 63 Ill. App. 3d at 228, 379 N.E.2d at 950.)

The only evidence tending to prove an intent to prevent defendant's brothers' apprehension was the fact that the brothers were subsequently found in the basement of defendant's residence. The court concluded that any inferences reasonably drawn from this fact were in conflict with the State's assertion that the defendant voluntarily allowed the police to search her home.

In *Powell,* the defendant was charged with bribery, solicitation, and attempt. It was agreed that the defendant gave a police officer $250, but there was a conflict concerning whether this money was delivered for the purpose of bribing the officer to dismiss a complaint against the defendant's client or whether the money was delivered because of demands and threats by the police officer. The court in *Powell* held that because the defendant was charged with solicitation to commit obstruction of justice, it had to be established that he intended that justice be obstructed, and that he intended to prevent the prosecution of a specific person. *Powell,* 48 Ill. App. 3d at 730, 362 N.E.2d at 1334.

Defendant believes *Shaw* is similar to the instant case and that the rationale and conclusion in that case control here. Defendant concludes this point by arguing that the concept of intending to obstruct someone's defense assumes there is something to defend. Peck was not charged with possession of a controlled substance and defendant believes there was thus no defense to obstruct.

■ ■ Once a defendant has been found guilty by the trial court, a presumption of validity accompanies the finding. (*People v. Morgan* (1988), 169 Ill. App. 3d 368, 523 N.E.2d 560.) "Resolution of factual disputes and the assessment of the credibility of witnesses is for the trier of fact, and a reviewing court will not reverse a conviction unless evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains." (*People v. Gray* (1986), 146 Ill. App. 3d 714, 716, 496 N.E.2d 1269, 1270.) The intent of a defendant to obstruct justice is established at the time of the incident (*Gray,* 146 Ill. App. 3d at 717, 496 N.E.2d at 1271), can be inferred from proof of the surrounding circumstances, and need not be proved

by direct evidence. *People v. Shields* (1955), 6 Ill. 2d 200, 205, 127 N.E.2d 440, 443.

■ Unlike *Shaw* and *Powell*, the evidence here supports the trial court's finding that at the time of the incident, defendant had the requisite intent for obstructing justice. In holding this, we note the following: (1) defendant was aware from the radio report that Peck had been stopped after placing a white powdery substance in his mouth; (2) defendant did not think any illegal drugs had been found on Peck; (3) defendant asked Beck to act as if he found the bag of pseudo-cocaine on Peck; (4) Beck rebuffed this suggestion and defendant went ahead and did it himself, stating something like "look what I found," and holding the bag in the air; (5) Officer Smith looked shocked at defendant's "discovery"; and (6) defendant gave several different explanations for his actions, telling Beck and Walker that he had taken the bag out for comparison purposes, even though he knew there was nothing to compare it to, telling the officers after the incident that it was a joke, and telling Walker that he used the pseudo-cocaine "in hopes that the suspect would admit or make a statement to where cocaine was." From the proof of the surrounding circumstances, and comments defendant made to the officers, it can be inferred that defendant had the intent to obstruct Peck's defense.

■ While defendant argues that Peck was never charged for possession of a controlled substance, we note that section 31—4(a) only requires the defendant to act with the intent to obstruct an individual's defense, not to actually obstruct a defense to a pending charge. The evidence at trial suggested the possibility that Peck could have been charged for possession of a controlled substance. If defendant's plan worked, and defendant confessed to a drug charge, there would have been a defense, which would have been obstructed by defendant's act. The intent to obstruct an individual's defense is not negated by the fact that the suspect is subsequently not charged with a corresponding crime.

Defendant also argues that the evidence does not support the trial court's finding that he planted false evidence on Peck with the intent to obtain a confession. Defendant believes the only evidence in the record to support the court's conclusion is Officer Walker's testimony that defendant told him he used the pseudo-cocaine in an attempt to induce a confession. Defendant denied making this statement and testified that he only told Walker he took the pseudo-cocaine out for comparison purposes. Defendant also claims his version is supported by Beck, who testified that defendant made only one statement during

that conversation, that defendant intended to use the substance for comparison purposes.

Defendant further argues that his actions after the incident support his belief that the incident was done only as a joke. After defendant acted as if he found the bag on Peck, he stepped away, did not talk to or interrogate Peck, and did not threaten to charge Peck with anything unless Peck made a statement. Defendant also notes that he never told Hannon or Brooks that he did this to obtain a confession. Defendant concludes here that the verdicts of guilty hang on the thin thread of a single witness, Walker, whose testimony about what the defendant said is "completely contradicted" by other witnesses and "all the other facts and circumstances in the case."

■■ ■ The trial court's finding that defendant planted false evidence on the suspect with the intent to obtain a confession is supported by the evidence. Determining the credibility of witnesses and the weight to be given their testimony is a function reserved primarily for the trier of fact, which in this case was the trial judge. A court of review will not normally substitute its own judgment for the trial court's. (*People v. Locascio* (1985), 106 Ill. 2d 529, 478 N.E.2d 1358.) The trial court determined Walker's testimony, as well as several of the other officers, to be more credible than defendant's testimony. Moreover, the court's conclusion does not rest only upon Walker's testimony, and Walker's testimony is not completely contradicted by other witnesses and the facts and circumstances in the case.

■■ Defendant's statement to Beck just prior to the incident, asking Beck to act as if he found the bag on Peck, in addition to defendant's statement to Walker, just after the incident, that he did it in the hope of obtaining a confession, shows defendant's intent to plant false evidence on Peck in an attempt to induce a confession. While defendant testified that he never made this statement to Walker, the trial court found Walker to be more credible than defendant. Moreover, Beck did not testify that defendant never said he used the bag of pseudo-cocaine to induce a confession. Beck only testified that he heard defendant state that he took out the bag for comparison purposes.

We further note that defendant's testimony is inconsistent with other testimony at trial. Officer Brooks testified that defendant told him "they" had done this before. Defendant denied making this statement to Brooks. Officers Beck, Smith, and Walker all testified that Peck was calm as he was searched, and did not resist in any noticeable way. Defendant, however, testified that Peck was excited during the search, continuously came off the car, and that Walker had to con-

stantly tell Peck to calm down. Moreover, Smith and Beck both testified that defendant never told them on the night the incident occurred that the entire thing was a joke. Defendant asserted at trial that he had. Finally, while Hannon testified that defendant told him he informed Peck that the bag was found on him, defendant denied making the statement.

The evidence thus shows that defendant walked up to Peck as he was being searched and acted as if he found a bag of cocaine on him. Defendant apparently realized from the other officers' reactions, however, that he had made a mistake. He then attempted to explain his action with three different explanations. While defendant claims the incident was only a joke, testimony by the officers present reveals that defendant did not immediately explain this to them. And, while defendant argues that his actions after the incident demonstrate it was only intended to be a joke, they more likely reveal that defendant suddenly realized the other officers would not go along with his plan and that he had made a serious miscalculation. The trial court found, and the evidence supports, that defendant's intent at the time of the act was to attempt to induce a confession from Peck.

Defendant next argues that even if he used the bag of pseudo-cocaine in an attempt to induce a confession, such an act would not constitute obstructing justice under the statute. Defendant did not file a post-trial motion and has waived this issue for appeal. Moreover, we do not find plain error to be present here. We do note, however, that defendant's argument is without merit.

Defendant argues that the act of misrepresenting facts by a law enforcement officer to an accused is usually dealt with in the *Miranda* context. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) The Illinois Supreme Court has held that such activity by itself does not ordinarily invalidate a waiver of rights or a resulting confession if it was voluntarily given. (*People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228; *People v. Kashney* (1986), 111 Ill. 2d 454, 490 N.E.2d 688, 693-94; *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270.) *Kashney* and *Martin* each involved misrepresentations by law enforcement personnel to suspects that their fingerprints had been found at the scene of the crime. *Holland* involved a misrepresentation by a police officer that he had received a report from another police department that the accused's vehicle had been seen in the same alley where the crime occurred and that he would have to explain why his vehicle was there. In another case, *Lynumn v. Illinois* (1963), 372 U.S. 528, 9 L. Ed. 2d 922, 83 S. Ct. 917, the police told the accused that if she did not cooperate, her children

would be taken away and she would lose her public aid. The accused eventually confessed. The misrepresentations in *Lynumn* amounted to threats and the court found the accused's confession coerced.

Defendant believes these cases are relevant to the instant case because, if officers are allowed to misrepresent facts to an accused to induce a confession, there can be nothing wrong with pretending to find a bag of cocaine on Peck during the search in an attempt to induce a confession. Defendant argues that if he is guilty of obstructing justice and official misconduct, the officers in the cases cited would also be guilty, even though their actions were found not to have violated the accused's *Miranda* rights. Defendant notes that research reveals no cases involving the prosecution of a police officer as a result of such conduct. Defendant suggests no such cases exist because it is within the broad range of police powers to perform such acts in an attempt to obtain the truth. If defendant used the pseudo-cocaine in an attempt to induce a confession, he argues he too was only searching for the truth, not deceit.

Defendant further notes that research reveals no cases under Federal civil rights actions alleging a violation of an accused's civil rights by a law enforcement officer's use of subterfuge or misrepresentations of fact to induce a confession. Moreover, the only cases similar to this, where a police officer failed to give a defendant *Miranda* warnings, have held there is no action pursuant to section 1983 of the Civil Rights Act of 1968 (42 U.S.C. §1983 (1988)) against an officer who failed to give such warnings. See *O'Hagan v. Soto* (S.D.N.Y. 1981), 523 F.Supp. 625, 629.

Defendant concludes here by noting that Brooks has falsely told a defendant that a codefendant confessed in an attempt to get the defendant to confess. (See *People v. Kokoraleis* (1986), 149 Ill. App. 3d 1000, 501 N.E.2d 207 (where such activity was held not to invalidate a confession).) Brooks was never disciplined or charged with official misconduct for this. Moreover, defendant notes that he was not disciplined by Hannon for his actions, other than receiving a warning. Defendant believes this supports his view that noncoercive misrepresentation of facts to obtain a confession is not obstructing justice under the Illinois statute or any other crime.

 We do not agree with defendant's argument. Section 31—4(a) of the Criminal Code of 1961 (Code) provides that "[a] person obstructs justice when, *with intent to* \*\*\* *obstruct the* \*\*\* *defense of any person,* he knowingly commits any of the following acts: (a) Destroys, alters, conceals or disguises physical evidence, *plants false evidence,* furnishes false information \*\*\*." (Emphasis added.) (Ill. Rev. Stat.

1989, ch. 38, par. 31—4(a).) We believe that this incident is covered by the specific language of the statute. While defendant also argues that if he acted with the intent to induce a confession, he was simply trying to obtain the truth, not deceit, section 31—4(a) does not make an exception for acts performed with the intent to obtain the truth.

The cases discussing misrepresentations by police officers in the *Miranda* context do not address whether such behavior constitutes obstructing justice within the meaning of the Code. This was not at issue in those cases. The same cases also do not condone such behavior and only address whether a confession was coerced. In some instances, such as *Lynumn*, the misrepresentations are severe enough to require suppression of the confession. While research does not reveal published opinion involving any instance in which an officer has been criminally charged for such behavior, there may be several reasons for this. An officer may have been charged for such misrepresentations, but plea bargained with the State. Or the State may have decided not to prosecute some misrepresentations because they were not severe enough. The police department or employing authority may handle the matter administratively. While there may be no published decisions supporting the view that defendant's act was criminal obstruction of justice, there are also no cases supporting the view that it is not. Under section 31—4(a) of the Code, defendant's action constitutes obstructing justice, for in attempting to induce a confession, defendant planted false evidence with the intent to obstruct Peck's defense.

Defendant's next argument is that if this court reverses his conviction for obstructing justice, it must also reverse his conviction for official misconduct. We do not reverse defendant's conviction for obstructing justice, but note that defendant's conviction for official misconduct does not rest upon his conviction for obstructing justice.

■ The indictments charged defendant with obstructing justice and official misconduct. Defendant believes that if he is not guilty of obstructing justice, there is no underlying statutory offense to provide the basis for the charge of the official misconduct. Defendant cites as authority *People v. Samel* (1983), 115 Ill. App. 3d 905, 451 N.E.2d 892, where the defendant was charged with official misconduct under section 33—3(b) of the Code. (Ill. Rev. Stat. 1981, ch. 38, par. 33—3(b).) Specifically, it was alleged in *Samel* that the defendant knew he was forbidden by law to perform the procurement of the name and address of a person through a computer system for purposes other than that of law enforcement. The indictment was dismissed in the trial court, but was reinstated on appeal. In discussing the law appli-

cable to charges of official misconduct under section 33—3(b), the court stated that the section "standing by itself, does not delineate specific criminal conduct but rather derives its meaning by referring to acts which are known to the defendant to be 'forbidden by law.' ([*People v. Adams* (1978),] 64 Ill. App. 3d 547, 549[, 381 N.E.2d 738, 740].)" *Samel*, 115 Ill. App. 3d at 909, 451 N.E.2d at 895.

██ █ The *Samel* opinion, however, also held that the underlying offense need not be one prohibited by Illinois statute, but may also be one prohibited by a "properly promulgated administrative rule or regulation." (*Samel*, 115 Ill. App. 3d at 910, 451 N.E.2d at 896.) Other cases have noted that an act providing the basis for a charge of official misconduct may be one prohibited by "identifiable statute, rule, regulation or tenet." (*People v. Bassett* (1988), 169 Ill. App. 3d 232, 235, 523 N.E.2d 684, 686.) In *People v. Thoms* (1977), 50 Ill. App. 3d 398, 365 N.E.2d 717, the defendant police chief was convicted of official misconduct in that he failed to forward traffic citations to the circuit court and collect bond from an offender before releasing him. The defendant in *Thoms* argued on appeal that he could not be convicted of official misconduct because there was no law which specifically indicated that the duty to impose and forward a bond or to institute court proceedings fell on the chief of police. Moreover, Supreme Court Rule 552 (43 Ill. 2d R. 552) specifically provided that the arresting officer was required to forward the traffic citations to the clerk of the circuit court. The appellate court in *Thoms* upheld the conviction, however, because regardless of where the statutory duty was initially placed, the testimony of the arresting officer indicated that defendant's use of his supervisory authority to terminate the statutory proceedings was improper. Testimony in the instant case revealed that defendant's act was not the policy of the department and was not condoned or promoted. Such testimony is sufficient to provide the basis for the charge of official misconduct.

Defendant's final argument is that the State failed to prove he knowingly performed an act which he knew he was forbidden by law to perform. This argument is in reference to the conviction for official misconduct. Defendant argues that under section 33—3(b), a party is not presumed to know the law. (*Samel*, 115 Ill. App. 3d at 909, 451 N.E.2d at 895.) Defendant believes the evidence is insufficient to prove beyond a reasonable doubt that he knew his acts were unauthorized by law.

Defendant first notes that while Smith and Brooks testified from their experience that the department did not accept, condone, or promote placing evidence on a person in an attempt to induce a confes-

sion, they never testified that defendant's action was against department policy. And, while Slade testified that he and others in his drug unit were aware of the performance and rules and regulations concerning the conduct of officers conducting these investigations, and that nothing in either departmental policy or the law allowed an officer to act as defendant did to induce a confession, Slade did not allege that defendant was a member of his drug unit or that defendant knew the rules and regulations regarding the conduct of persons within that unit.

Defendant further argues that evidence was admitted showing that other officers had misrepresented facts to accused persons to elicit confessions. Thus, defendant concludes that this court cannot presume he knew his acts were unauthorized by law and believes that what some people in the department believe to be wrong can hardly be said to prove knowledge on defendant's part.

 The evidence here was sufficient to prove defendant had the knowledge that his act was wrong. Defendant testified that he had been a law enforcement officer for 10½ years. Smith testified that such acts were neither accepted, promoted, nor condoned. Slade testified that nothing in *department* policy, nor unit policy, allowed an officer to act as defendant did. Moreoever, Brooks testified that the policy of the Decatur police department is that an officer cannot purport to find evidence on a person if he in fact did not find the evidence on that person. Mowen testified that it is not police department policy to attempt to get suspects to admit they possessed real cocaine.

In *People v. Locascio* (1985), 137 Ill. App. 3d 201, 484 N.E.2d 451, defendants, Cook County forest preserve officers, were charged with official misconduct. Because the officers' duties were to enforce rules made to protect the forest preserve and the animals therein, the court found that they necessarily had to know that their acts were unauthorized conduct. The same is true here.

Accordingly, the trial court is affirmed.

Affirmed.

GREEN and KNECHT, JJ., concur.