THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN TORRES, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0799

Opinion filed January 23, 1991.—Rehearing denied March 5, 1991.

Karen Daniel, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and Neera Lall, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Defendant, Melvin Torres, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)) after a bench trial. He argues on appeal that he was denied effective assistance of counsel and that the trial court erred in admitting his written pretrial confession.

Prior to trial, the defendant filed a motion to suppress pretrial statements alleging that they were involuntary because they resulted from psychological and mental coercion. At the hearing on the motion, Assistant State's Attorney John Muldoon testified that, after speaking with youth officer Charles Stella, the victim, and the victim's mother, he interrogated the defendant. He said that the defendant first gave a statement that did not correspond exactly to what the victim had said. Muldoon informed the defendant of the inconsistencies, and then told the defendant that there were two types of people who commit sexual acts against children. He stated that one group was evil while the other was sick. He continued, "the people who are sick *** the first part in getting help is to admit that they do have a

problem *** while evil people, they deny they do these things *** and those are the *** kind of people that you can't help." Muldoon told the defendant that the court could make him go to counseling and, that if he told the truth, Muldoon would tell the judge what the defendant said. Ultimately, the defendant made an oral statement admitting the allegations. Muldoon then prepared a written statement, which the defendant signed.

Youth Officer Frank Stella testified that he had a conversation with the defendant prior to Muldoon's arrival. According to Stella, the defendant initially denied some of the allegations against him, but admitted that he had touched the victim's vagina through her underpants. Stella then told the defendant he would have to talk to an assistant State's Attorney. On redirect, Stella testified that the defendant's earlier oral statement to him was substantially the same as the final written statement. He testified that the defendant initially stated that he touched the victim's vagina through her underpants, but later said that he kissed her vagina with her underpants down.

The defendant testified that Officer Stella contacted him at work, telling him to report to the police station because there was a serious charge against him. When the defendant went to the police station, he met Officer Stella, who told him what the allegations were. After the defendant denied the charges, Stella did not question him further, but told him he was under arrest and had to wait for an assistant State's Attorney.

When Assistant State's Attorney Muldoon arrived, he told the defendant that the victim seemed very convincing and that he believed her story. The defendant further testified that he remained quiet until after Muldoon explained that two types of people commit sexual acts against children: evil people, who are punished with jail and who never get out, and sick people, who are offered help. Muldoon further stated that the victim's mother had said that the defendant was not evil, but did have a problem. The defendant then admitted the allegations and was advised of his rights. The defendant testified that he signed the written statement because he was scared and was talked into signing it. Following arguments by counsel, the trial court denied the defendant's motion to suppress the confession.

At trial, J.W. testified that she was 10 years old and that she knew the difference between the truth and a lie. In August 1986, J.W. lived with her mother and her sister in Chicago. The defendant, who was then her mother's boyfriend, lived in the same building. One morning, when the defendant was babysitting for her and her younger sister, J.W. was sitting on her top bunkbed putting away her Mo-

nopoly game when the defendant entered the room. She asked the defendant to pick up some play money from the floor, which he did. J.W. testified that she was sitting "indian style," and the defendant tried to "break" the way she was sitting. When he was unable to do so, the defendant pulled her underpants up a little bit and licked her vagina. The defendant asked J.W. if it felt good. When she did not respond, he left the room. J.W. dressed her younger sister and went downstairs to her friend's apartment where she told her friend what had happened. J.W. testified that the defendant had never done anything like that before or since.

Officer Stella testified that he was present when Assistant State's Attorney Muldoon interrogated the defendant on March 6, 1987. After the interrogation, the defendant's statement was put into writing. Subsequently, the defendant signed the written confession. During cross-examination, the defense counsel's only questions restated the direct examination concerning the interrogation. He did not probe into the circumstances surrounding that interrogation. He further inquired about one of Stella's reports, which stated that the victim's hymen was still intact.

During closing arguments, the defense counsel stated, "I believe what happened is Melvin Torres kissed the vaginal area and realized what was happening and withdrew and went back." The defense counsel also argued that the incident was an isolated one, that defendant was a family member because he lived in the same building and was the boyfriend of the victim's mother, and that sexual contact, but no actual penetration, occurred. The trial court then directed counsel to the applicable State statutes defining sexual penetration. The prosecutor responded that defense counsel was misinformed about the statutory definition of penetration and that the defendant did not meet the statutory definition of a family member.

The trial court found Melvin Torres guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)), but not guilty of the two counts of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13). The trial court sentenced him to six years' imprisonment.

■ The defendant asserts that he was denied effective assistance of counsel because defense counsel did not understand the statutory elements of aggravated criminal sexual assault, thus pursuing a defense theory which left the trial court no choice but to find the defendant guilty. The sixth amendment of the United States Constitution guarantees the right to effective counsel to protect the fundamental right to a fair trial. (*Strickland v. Washington* (1984), 466 U.S.

668, 684, 80 L. Ed. 2d 674, 691, 104 S. Ct. 2052, 2063.) In order to establish ineffective assistance of counsel under *Strickland,* a defendant must prove that his counsel was deficient and that he was prejudiced by that deficiency. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) The attorney's performance must be reasonably effective assistance considering all the circumstances (*Strickland,* 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065), and the court's scrutiny of that performance must be highly deferential. *Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

Prejudice requires showing that the counsel's errors were so serious that the defendant was deprived of a fair trial. (*Strickland,* 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct at 2069.) The defendant must show that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) In making this determination, the court must examine the totality of the circumstances. *Strickland,* 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

The ultimate focus of the inquiry must be on the fundamental fairness of the proceeding. (*Strickland,* 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) At a minimum, the sixth amendment of the United States Constitution requires that defense counsel act as a true advocate for the accused, subjecting the prosecutor's case to meaningful adversarial testing. (*United States v. Cronic* (1984), 466 U.S. 648, 656, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045; *People v. Hattery* (1985), 109 Ill. 2d 449, 461.) If counsel does not do so, the adversary process itself is presumptively unreliable. *Cronic,* 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047; *Hattery,* 109 Ill. 2d at 461.

Illinois courts have held that admission of a defendant's guilt by his defense attorney may be a violation of the defendant's sixth amendment right to the effective assistance of counsel. (*People v. Johnson* (1989), 128 Ill. 2d 253.) In *Hattery,* the *Strickland* test was not used because the defense counsel's unequivocal concession of the defendant's guilt amounted to a presumption of ineffectiveness of counsel. (*Hattery,* 109 Ill. 2d at 464-65.) In that murder trial, the defense counsel conceded the defendant's guilt in the opening statement, advanced no theory of defense, presented no evidence of its own, and made no closing argument to the jury. Counsel attempted to develop cross-examination on the theory of compulsion, which was not an available defense to the offense of murder. (*Hattery,* 109 Ill. 2d at

459.) The court emphasized that the constitutional right of a criminal defendant to plead not guilty includes the obligation of his attorney to structure the trial of the case around his client's plea. (*Hattery*, 109 Ill. 2d at 463, citing *Wiley v. Sowders* (6th Cir. 1981), 647 F.2d 642, 650.) Even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt. (*Cronic*, 466 U.S. at 656 n.19, 80 L. Ed. 2d at 666 n.19, 104 S. Ct. at 2045 n.19; *Hattery*, 109 Ill. 2d at 465.) Where there is a plea of not guilty, defense counsel may not concede his client's guilt in the hope of obtaining a more lenient sentence unless the record adequately shows that the defendant knowingly and intelligently consented to his counsel's strategy. *Hattery*, 109 Ill. 2d at 465.

The defendant in this case relies on *People v. Chandler* (1989), 129 Ill. 2d 233, 249, where the court ruled that the defense counsel's failure to comprehend the law, as evidenced by his strategy and actions, amounted to no real defense. The prosecution's case, therefore, was not subject to meaningful adversarial testing, thus depriving the defendant of a fair trial. (129 Ill. 2d at 249.) The court used the *Strickland* test, distinguishing *Chandler* from *Hattery*. The court explained that the defense counsel's remarks in *Hattery* amounted to an unequivocal concession of the defendant's guilt, while the counsel's remarks in *Chandler* did not completely and unequivocally concede the defendant's guilt. *Chandler*, 129 Ill. 2d at 245.

The defendant in *Chandler* was charged with murder, residential burglary, and arson. His statement to the police was that he and his codefendant broke into the victim's home, ransacked it, and took some items. He stated, however, he did not kill the victim, although his codefendant did. They both returned and burned the house down to cover up any possible evidence. The defense counsel stated in his closing argument that the jury would have to decide whether the evidence constituted residential burglary. Counsel admitted only what the defendant had already confessed to, and the jury heard a police officer testify to defendant's statements. Counsel argued to the jury that they should believe everything that the defendant told the police, including the defendant's denial of killing the victim. Further, counsel did not concede any fact to which the defendant did not admit in his statements to the police.

The court ruled that counsel's remarks were not presumptively prejudicial under *Hattery*, but were the basis of counsel's deficiency. (*Chandler*, 129 Ill. 2d at 246.) Counsel's strategy, the court reasoned, was deficient because he did not attempt to develop a theory of inno-

cence during his cross-examination of several witnesses, did not cross-examine several key witnesses, and did not present any witnesses on behalf of the defense, even though he told the jury in his opening argument that he would call the defendant. (*Chandler*, 129 Ill. 2d at 246.) Defense counsel seemingly followed this strategy in the mistaken belief that the jury could find the defendant not guilty of murder if they believed that he did not actually stab the victim. The court noted, however, that the jury had been instructed on both felony murder and accountability. Thus, the court concluded that they had no choice but to find the defendant guilty of murder, residential burglary, and arson.

The court stated that the ultimate error was that, even if the defense attorney had been successful in convincing the jury that the defendant did not stab the victim, they were still instructed to find the defendant guilty of murder under the law of accountability or felony murder. (*Chandler*, 129 Ill. 2d at 247.) The court, quoting *United States ex rel. Barnard v. Lane* (7th Cir. 1987), 819 F.2d 798, noted that legitimate trial strategy did not include abandoning the defendant's only defense in hope that a jury's sympathy will cause them to misapply or ignore the law. (*Chandler*, 129 Ill. 2d at 248.) The court reasoned that, when presented with a difficult case, counsel must provide reasonably effective assistance to a defendant. (*Chandler*, 129 Ill. 2d at 250.) When the defense counsel's performance left the jury with no choice but to convict the defendant of the crimes charged, that performance clearly prejudiced the defendant. (*Chandler*, 129 Ill. 2d at 250.) The court also ruled that there was a reasonable probability that, but for the counsel's deficient performance, the result of the trial would have been different. *Chandler*, 129 Ill. 2d at 250.

■ In this case, the defense counsel pursued a defense theory that assured that the trial judge would find the defendant guilty of aggravated criminal sexual assault unless he disregarded the law. The defendant was convicted of aggravated criminal sexual assault in that "he was seventeen years of age or over and committed an act of sexual penetration, upon J.W., to wit: contact between Melvin Torres' mouth and the vagina of J.W. and J.W. was under thirteen years when the act of sexual penetration was committed, in violation of chapter 38, section 12—14—B(1), of the Illinois Revised Statutes 1985, as amended." Sexual penetration is defined as "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person." Ill. Rev. Stat. 1955, ch. 38, par. 12—12(f).

Defense counsel either was ignorant of, or chose to ignore, the legal definition of penetration. During the trial, the defense gave no

opening statement and presented no testimony of its own. During the cross-examination of the victim and the youth officer, the defense counsel attempted to develop a theory of no actual penetration by a family member. He did not present a theory of innocence. The defense theory was that the defendant was not guilty of aggravated criminal sexual assault because, despite oral-vaginal contact which counsel conceded took place, there was no sexual penetration. Specifically, during his closing argument, the defense counsel said, "I believe what happened is Melvin Torres kissed the vaginal area and realized what was happening and withdrew and went back." The defense counsel further argued that there was no penetration because the ordinary meaning of penetration is for "something to go into something not just contact within a family group." He ignored the statutory definition of penetration, substituting his own.

The defense counsel also based his defense on the claim that the defendant could be considered a family member because he lived in the same building as the victim, was the boyfriend of the victim's mother, and was frequently in the victim's apartment. However, the status of family member is not a defense to the charge of aggravated criminal sexual assault. See generally Ill. Rev. Stat. 1985, ch. 38, pars. 12—12(c), 12—13(3), 12—14.

The trial court had no other choice but to convict the defendant of aggravated criminal sexual assault. The defense counsel's deficient performance clearly prejudiced the defendant. There was a reasonable probability that, but for the counsel's deficient performance, the result of the trial would have been different. Therefore, this case is reversed and remanded for a new trial. Since this issue is dispositive of the case, we will not consider the defendant's other argument.

Reversed and remanded.

WHITE and RIZZI, JJ., concur.