THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL ANTHONY CHILDS, Defendant-Appellant.

Fourth District    No. 4—93—0597

Argued April 18, 1995.—Opinion filed May 31, 1995.

Daniel D. Yuhas and Lawrence Bapst (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On April 29, 1993, defendant Paul Anthony Childs was indicted in the circuit court of McLean County for the offense of obstructing justice (720 ILCS 5/31—4(a) (West 1992)), in that he knowingly made certain false statements to a police officer with the intent to prevent the apprehension by the police of Michael Carlos. On May 6, 1993, following a jury trial, the court entered judgment on a verdict finding defendant guilty. Subsequently, the court imposed a sentence of three years' imprisonment.

Defendant has appealed contending that (1) the evidence did not support the verdict; (2) the court erred in denying his motion to suppress the statements he made to the police which were the subject matter of the charges; and (3) he received ineffective assistance of counsel. Although much of the evidence was circumstantial, it was strong enough to support the verdict. The motion to suppress involved an unusual theory on a subject about which no direct precedent exists. However, we are satisfied that the circuit court ruled correctly. The claim of incompetent counsel has no merit. We affirm.

At trial, Bloomington police detective Rick Davis testified that (1) in the early morning hours of December 19, 1992, he, another detective, and two uniformed officers went to an apartment in Bloomington seeking to capture Carlos, who was suspected of murder; (2) Barbie Price, the tenant in possession of the apartment, gave the police group permission to enter to search for Carlos; (3) as Davis approached the door to the bedroom of the apartment, Sandra Garza left the bedroom, closing the door behind her; (4) Davis then opened the door, turned on the bedroom lights, and discovered Rodney Harris behind the door; (5) Davis arrested Harris pursuant to an unrelated warrant; (6) Bloomington police officer James Avery then opened the door to a bathroom and discovered defendant inside; (7) the officers then required defendant to get on his knees; and (8) defendant was then facing the door while a bed was four feet to defendant's right.

Davis then explained that while defendant was on his knees, he (Davis) twice asked defendant where Carlos was and defendant twice responded that he did not know Carlos. Davis noted that during the

time defendant was on his knees, he continually asked for permission to stand up and that permission was denied. Davis also admitted that he questioned defendant in a loud and assertive tone of voice. The evidence was undisputed that when defendant was questioned, the officers were armed and at least a shotgun was pointed at defendant. The evidence was also undisputed that shortly after defendant's responses, Avery found Carlos under the bed in the bedroom and defendant was then arrested. Avery's testimony corroborated that of Davis.

Sandra Garza testified for the State that (1) between 1 and 2 a.m. of the morning the offense allegedly occurred, she brought Price to the apartment where the incident at issue occurred and only Colleen Schuster was then there; (2) Garza then left and returned at approximately 3 a.m. with Rodney Harris and found Carlos and defendant sitting in the front room listening to music; (3) when Schuster started to go to the bathroom, she heard a knock on the door so she woke Price up; (4) at that time lights were on in the bedroom; (5) she then went to the bathroom and when she came out into the bedroom, the lights in the bedroom were off but she heard the voices of Harris and the defendant; and (6) when she left the bedroom, she saw the police who were then in the apartment. She heard the defendant being asked where Carlos was and she heard defendant respond saying "I don't know."

Schuster was the only witness for the defense. She testified that (1) she was at the Price apartment the entire evening that defendant was arrested; (2) upon her arrival, she observed Garza and Harris, both of whom left and returned later that evening; (3) she was awakened when defendant entered the apartment alone; (4) defendant watched television for about one-half hour and then Carlos arrived; (5) Garza and Harris returned soon thereafter; (6) she did not see defendant and Carlos together; (7) after Garza and Harris returned, she fell asleep and did not awaken until the police arrived; and (8) she saw the officers "rush in with guns and barge the bedroom door in and take [Harris] out in handcuffs."

Schuster testified she saw the police "throw" defendant to his knees, point their guns at him and yell questions at him seeking the location of Carlos and that defendant kept saying "I don't know." On cross-examination, Schuster admitted that she had seen defendant and Carlos together "[m]aybe on the street a couple of times."

■ Section 31—4(a) of the Criminal Code of 1961 (Code) defines the offense of obstructing justice, as charged here, as follows:

> "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:

(a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information." (720 ILCS 5/31—4(a) (West 1992).)

Relevant to the charge, here, the State had the burden of proving (1) defendant knowingly furnished false information to the police; and (2) the false information was furnished with the intent to prevent the apprehension of Carlos. *People v. Jackiewicz* (1987), 163 Ill. App. 3d 1062, 1064, 517 N.E.2d 316, 318.

The parties recognize the standard for review of a criminal conviction requires the evidence to be viewed "in the light most favorable to the prosecution, [and if] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be affirmed. (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; see also *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) The role of the jury includes the resolution of conflicts in evidence and the determination of the credibility of witnesses. *People v. Sanchez* (1986), 115 Ill. 2d 238, 261, 503 N.E.2d 277, 284.

Defendant maintains that the State failed to prove his guilt because the State did not prove that (1) he gave the information voluntarily rather than by force, (2) the information was untrue, and (3) he intended to prevent the apprehension of Carlos.

Defendant's theory that his statement to the police must have been voluntary finds some support in the opinion of this court in *People v. Gray* (1986), 146 Ill. App. 3d 714, 496 N.E.2d 1269, and the Appellate Court for the Second District in *People v. Brooks* (1977), 51 Ill. App. 3d 800, 367 N.E.2d 236.

In *Brooks*, the court set aside a conviction for obstructing justice based upon furnishing of false information to an arresting officer. There, unlike here, the question called for an answer that might have incriminated the defendants in that case. The opinion indicated that if the question by the police did not call for an incriminating answer, "a defendant *once he has voluntarily agreed to make a statement* has no privilege to intentionally mislead the police." (Emphasis added.) *Brooks*, 51 Ill. App. 3d at 805, 367 N.E.2d at 239.

In *Gray*, the defendant gave false information to police concerning matters which could not have incriminated her. This court held that the proof supported the conviction although the defendant had later recanted her untrue statements. This court stated that, as in *Brooks*, except when answers to police questioning would involve self-incrimination "a defendant *who has voluntarily* agreed to make a statement has no privilege to intentionally mislead police as to crimes

of others." (Emphasis added.) *Gray*, 146 Ill. App. 3d at 716, 496 N.E.2d at 1270.

We discuss in more detail in connection with the ruling on the motion to suppress the issue of incrimination arising from the questions posed defendant by the police. Clearly there was no evidence defendant was involved in the murder for which Carlos was sought. The questions did not involve any past conduct of defendant. As in *Gray*, the answers involved a crime by the defendant only if the answers were untrue. That connection with crime did not negate the existence of the offense of obstruction in *Gray* and it does not do so here.

■ The circumstantial evidence supports a jury determination that defendant's answer was untrue and that he intended to hamper or prevent the apprehension of Carlos. Schuster admitted she had seen defendant and Carlos together on the street several times. The evidence is undisputed that they were together for awhile that night in the living room listening to music. According to Garza, lights were on in the bedroom as she went to the bathroom and were turned out when she came out, and the police had entered the apartment. According to Schuster, Carlos went into the bedroom as the police arrived. Defendant would have to have already been in the bedroom or also have come in at that time. When the officers questioned defendant, Carlos was under the bed a few feet from defendant. The jury could well have determined that defendant knew who Carlos was and that he was under the bed but lied to the officers to protect Carlos.

We now turn to the question of the circuit court's denial of the motion to suppress the questions asked defendant by Davis and the answers given by defendant. The unusual theory propounded by the defendant is that the officers should have given *Miranda* warnings to defendant before asking him where Carlos was. The case is unusual because the statement sought to be suppressed has no bearing on any offense which the defendant might have committed in the past. As we have stated, no evidence indicated he was involved with Carlos in the murder for which Carlos was sought. Rather, the answer which defendant gave to Davis' question was, itself, the basis of the new offense for which defendant is now charged.

No case closely on point has been called to our attention. However, even in circumstances where officers have taken persons accused of crime into custody in violation of the fourth amendment and, while in this improper custody, the accused attempts to bribe his captors, the offer of the bribe has been held to be admissible in evidence in a prosecution for the new offense of bribery and not subject to suppression. See *People v. Townes* (1976), 41 N.Y.2d 97, 359

N.E.2d 402, 390 N.Y.S.2d 893; 4 W. LaFave, Search & Seizure § 11.4(i) (2d ed. 1987).

The evidence at the hearing on the motion to suppress consisted of the testimony of Avery and Davis. Their testimony was much the same as that which they gave at trial. Avery stated they had no evidence linking defendant to Carlos. He admitted that he carried both a service revolver and a shotgun and the other officers had service revolvers. He stated that they displayed their weapons for safety purposes and that both he and Davis pointed at defendant's "center mass" as they asked him about Carlos. According to Avery, defendant's response was that he did not know *who* Carlos was. No evidence was presented at the suppression hearing that defendant stated he did not know *where* Carlos was. Davis' testimony corroborated that of Avery but did not give any additional information.

In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the United States Supreme Court outlined the now familiar *Miranda* warnings, and in summary stated:

> "Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons *suspected or accused* of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (Emphasis added.) *Miranda*, 384 U.S. at 467, 16 L. Ed. 2d at 719, 86 S. Ct. at 1624.

Later, in *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682, the United States Supreme Court discussed the types of interrogation practices used in a custodial setting that required the giving of *Miranda* warnings. The *Innis* Court concluded that *Miranda* warnings were required when an individual is in custody and exposed to "interrogation" as defined as follows:

> "That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *** But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis in original.) *Innis*, 446 U.S. at 301-02, 64 L. Ed. 2d at 308, 100 S. Ct. at 1689-90.

In support of defendant's theory that *Miranda* warnings were required here before Davis could properly question defendant about the whereabouts of Carlos, defendant relies upon the cases of *United States v. Perdue* (10th Cir. 1993), 8 F.3d 1455, *People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d 571, and *People v. Hentz* (1979), 75 Ill. App. 3d 526, 394 N.E.2d 586. All of these cases concern questioning by law enforcement officers of people under restraints similar to that imposed upon defendant here.

In *Perdue*, the accused was charged with Federal drug offenses, including possession of marijuana with intent to deliver. The circuit court of appeals held that the district court committed reversible error in refusing to suppress and allowing into evidence a statement by the accused made while lying on the ground with law enforcement officers pointing guns at him. Officers had detected a marijuana field by helicopter overflight and obtained a search warrant for the remote area of that field. Pursuant to the warrant, officers went to the area, placed a few perimeter guards and started the search. The accused approached the area in an automobile, saw the guards and attempted to turn around and leave but officers stopped him at gunpoint and required him to lie on the ground.

In *Perdue*, before *Miranda* warnings were given, an officer asked the accused why he was there and the accused answered that he was there to "check on his stuff" which he described as " '[t]he marijuana that I know that you guys found in the shed.' " (*Perdue*, 8 F.3d at 1459.) The accused then further stated that the marijuana belonged to his fiancée and him. The court of appeals concluded that the stopping of the accused and the holding of him at gunpoint were reasonable under the circumstances but that a custodial situation was created. The court then concluded that the questions were asked to determine whether the accused owned the marijuana in the field and the questioning was " 'reasonably likely to illicit an incriminating response.' " The court held that, accordingly, a violation of *Miranda* occurred. *Perdue*, 8 F.3d at 1465.

In *Calderon*, officers went to a defendant's residence to arrest him, entered with drawn revolvers pointed at him, required him to lie on the floor, and, before giving *Miranda* warnings, asked him where his car was. That defendant gave an untrue answer. Suppression of the answer was sought on the basis that the untrue statement could be used as an admission of guilt by the defendant but the trial court refused to suppress the statement. On appeal, after a conviction, the appellate court held that the answer should have been suppressed but the answer had so little probative value that the refusal to suppress was harmless error. *Calderon*, 101 Ill. App. 3d at 478, 428 N.E.2d at 577.

In *Hentz*, police had been called to the scene of a shooting and were told by the dying victim that the defendant had shot him. They then went to that defendant's residence, entered with guns drawn, and knocked at his door. When that defendant opened the door, one of the officers asked him what had happened. That defendant responded that he had an argument with the victim and shot him and upon further questioning told the officers where the murder weapon could be found. Suppression of this conversation was affirmed. The appellate court pointed out that the questioning did not occur at the scene of the crime and that it did occur while the defendant was under restraint and while the others strongly suspected that the defendant killed the victim.

No case has been called to our attention where *Miranda* warnings are required because, as here, the answer that defendant might give would of itself create a new crime. Moreover, even if the likelihood that defendant's answer would constitute a crime would in some way be deemed to put the questioning within the purview of *Miranda*, the narrow exception of that rule set forth in *New York v. Quarles* (1984), 467 U.S. 649, 81 L. Ed. 2d 550, 104 S. Ct. 2626, would justify the refusal of the circuit court to suppress defendant's answer. There, officers were in the act of apprehending a man believed to be carrying a weapon in a supermarket. When the suspect was apprehended, the police discovered an empty holster. Prior to giving the suspect *Miranda* warnings, an officer asked the defendant the whereabouts of the gun, and the defendant's response led the police to discover the gun, which was admitted as evidence at trial.

The *Quarles* Court concluded that the concealed gun in the supermarket posed a danger to the public, and under such a situation the need to protect the safety of the public outweighed the need for the protection of the defendant's fifth amendment rights. The Court recognized the volatile position the police face when confronting dangerous situations that require quick decisions. There, the Court noted as significant that the officer only asked questions necessary for the location of the gun before advising the defendant of his *Miranda* rights.

Here, the likely presence of a murder suspect in the apartment where defendant was being questioned, or even the existence of that suspect at large, presented at least as great a danger to the public in general and the police officers in the apartment in particular as did the gun in *Quarles*. The officers in *Quarles* knew that the gun was not on the person of that defendant. Thus, the exigency of the circumstances here was at least as great as in *Quarles*.

In *People v. Laliberte* (1993), 246 Ill. App. 3d 159, 615 N.E.2d 813,

the Appellate Court for the Second District determined that harmless error occurred when the trial court refused to suppress a statement made by the kidnapper after lengthy in-custody police questioning. The statement described the place where the kidnapper had left the kidnapped child. Before the questioning started, the kidnapper had demanded an attorney. That court noted that the *Quarles* decision concerned a situation where the threat to public safety was the exigent factor that created an exception justifying the interrogation.

■ The *Laliberte* court deemed the private safety of the child was the exigent factor. While that opinion is not entirely clear as to whether the difference between the public safety and private safety nature of the exigency was significant, the refusal to grant the defendant's request for counsel was the basic reason for the holding that the statement of the whereabouts of the child should have been suppressed. (*Laliberte*, 246 Ill. App. 3d at 171, 615 N.E.2d at 821-22.) Without passing upon the propriety of *Laliberte*, we conclude that here where no request for counsel was made by defendant and the right being protected was public safety, *Quarles* would apply if a fifth amendment problem is deemed to exist.

Defendant filed a supplemental brief contending he was denied effective assistance of counsel at trial because that counsel failed to assert in the trial court that the statements made by defendant to Davis when questioned were involuntary. We have already discussed the issue of voluntariness as an element of the offense and found the proof sufficient that the statement was voluntary. We have also held that no fifth amendment question was raised by the statement as it was not incriminating as to past offenses. Even if a fifth amendment issue was involved, we conclude that *Quarles* would prevent the statement from being subject to being quashed.

Finally, we note that the purpose of the exclusionary rule which defendant seeks to invoke here has been variously stated as (1) to deter improper conduct by law enforcement personnel; (2) to prevent the court from being an accomplice to willful violations of the constitution; and (3) to assure that the government not profit from lawless behavior undermining popular trust in the government. 1 W. LaFave, Search & Seizure § 1.1(f) (2d ed. 1987).

Defendant admits that every aspect of police conduct here was proper except that he should have been given *Miranda* warnings before he was asked about the whereabouts of Carlos. We have explained that no fifth amendment problem was present and, even if it was, the exigency of the circumstances justified the questioning. None of the stated purposes of the exclusionary rule would have been served by requiring the suppression of the evidence involved here. The circuit court properly refused to do so.

■ Defendant filed a supplemental brief contending he was denied effective assistance of counsel at trial because trial counsel failed to assert as a grounds for suppressing his statements that the fact they were made at gunpoint made them involuntary. He cites *Arizona v. Fulminante* (1991), 499 U.S. 279, 113 L. Ed. 2d 302, 111 S. Ct. 1246, *Culombe v. Connecticut* (1961), 367 U.S. 568, 6 L. Ed. 2d 1037, 81 S. Ct. 1860, and *Perdue*. However, all of these cases concern the fifth amendment right against self-incrimination which we have distinguished from the situation here and, even if this case is deemed to present a fifth amendment issue, those cases do not involve a public safety factor as here and in *Quarles*. Accordingly, any failure on the part of the defense to specifically argue that the statements were not voluntary did not prejudice defendant.

As the evidence supported the verdict, the denial of the motion to suppress was proper, and no incompetence of defense counsel was shown, we affirm.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.