# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Farmer*, 2011 IL App (1st) 083185

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDDIE FARMER, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1–08–3185 |
| Filed | June 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The constitutionality of section 32–5.3 of the Criminal Code, creating the offense of falsely representing oneself to be the parent, legal guardian or other relation of a minor child to a public employee, was upheld over defendant's contention that the statute was unconstitutionally overbroad and criminalized constitutionally protected speech, and his contention that his counsel was ineffective also was rejected, since the State has a compelling interest in safeguarding minors, the State's proposal to limit the application of the statute to false statements given knowingly and with the intent of deceiving the relevant public official or employee advanced the State's interest in protecting minors while limiting the punishment of speech to cases where a person knowingly deceives a public official or employee to frustrate the operations of government in the protection of minors, and although defense counsel's repeated statements at trial that defendant was "not a saint" may have suggested that defendant was involved in other criminal activities, it reflected a trial strategy suited to the evidence against defendant, and given that evidence, there was no reasonable probability that counsel's performance affected the trial's result. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02–1213446; the Hon. Anthony A. Iosco, Judge, presiding. |
| --- | --- |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Unsinn, and Jessica Wynne Arizo, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, Tasha-Marie Kelly, and Gino Betts, Jr., Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE STEELE delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial in the circuit court of Cook County, defendant Freddie Farmer was found guilty of falsely representing himself or herself to be the parent, legal guardian or other relation of a minor child to a public employee, which in this case was a police officer (720 ILCS 5/32–5.3 (West 2002)). Farmer was sentenced to 364 days in the Cook County Department of Corrections. Farmer now appeals, arguing: (1) the false personation statute violates the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV); and (2) he received ineffective assistance of counsel at trial. For the following reasons, we reject both claims and affirm the judgment of the trial court.

¶ 2                                    BACKGROUND

¶ 3 The record on appeal discloses the following facts. At trial, Victoria C. testified that her daughter, L.W., ran away in March 2002, when she was a 12-year-old. Victoria C. filed a missing person report with the Chicago police department. The story was featured on the local Channel 5 news and a police program. Victoria C. further testified she did not know Farmer, she had not given him permission to care for her daughter, and he was not related to her or her daughter.

¶ 4 Chicago police officer O'Neal testified that on June 1, 2002, at approximately 3 p.m.,

he and Officer Clarence Williams were on routine foot patrol, in uniform, in an open area shopping mall located on 63rd and Halsted Street. A store employee alerted the officers that he saw a girl who was featured on Crime Watch as a missing person in the mall, and he pointed her out to them. The girl, who was identified as L.W., was wearing a black spandex halter-top, black spandex pants, high heels, and makeup on her face.

¶ 5 Officer O'Neal testified that he asked Farmer, who was walking with L.W., who she was and Farmer responded, "Shanetta Thompson" or "Shanetta Tomson," his 16-year-old cousin. Officer Williams also testified Farmer said L.W. was his cousin, "Shauna Tompson," but denied Farmer said the girl was 16 years old. The officers asked about the girl's clothing, to which Farmer reportedly stated her mother did not mind. Both O'Neal and Williams testified Farmer stated she had lived with him and his mother for two years.

¶ 6 When Officer O'Neal told Farmer they should go to the police station for further questioning to "finish this up," Farmer responded "Fuck this," dropped his shopping bags, and ran. Officer Williams yelled at Farmer to stop running three times, then gave chase and arrested him after Farmer ran into the door of a police car. Following his arrest, Farmer and L.W. were taken to the police station, where Farmer continued to proclaim L.W. was his cousin. After learning of L.W.'s identity from the youth division, the police returned L.W. to her mother.

¶ 7 During the cross-examination of Officer O'Neal, defense counsel noted Farmer's statement that he had been living with L.W. for two years did not tell the police anything about their relationship. Officer O'Neal replied, "Other than he is a liar." Defense counsel also asked whether Farmer's statements to a Detective Doyle would shed light on the truth of the case. Officer O'Neal replied that he did not know, because Detective Doyle was investigating whether Farmer had sex with L.W., which was outside the scope of O'Neal's investigation. Defense counsel then asked whether the criminal complaint contained a rape charge. Officer O'Neal admitted there was no such charge as of that day.

¶ 8 During the cross-examination of Officer Williams, defense counsel asked him why people generally run from the police. Officer Williams responded that sometimes it is out of fear, but most of the time it is because they had done something wrong. Defense counsel then asked Officer Williams if he checked to see whether Farmer's shopping bags contained any stolen items. Officer Williams replied that he had not. When defense counsel attempted to ask Officer Williams what a teenage girl dressed like L.W. was likely to be doing for money, the trial judge sustained the State's objection to the question.

¶ 9 The State rested its case. The defense moved for a directed finding, which the trial court denied. The defense rested without presenting any evidence or witnesses.

¶ 10 During closing arguments, defense counsel repeatedly stated that Farmer was "not a saint." Defense counsel also suggested that Farmer may have been engaged in some other type of wrongdoing at the time of his arrest. Following closing arguments and issuance of jury instructions, the jury deliberated and found defendant guilty of false personation.

¶ 11 On February 6, 2003, the circuit court sentenced defendant to the maximum 364 days in the Cook County Department of Corrections, including eight months of day-for-day credit. On the same day, Farmer's counsel filed a posttrial motion for a new trial stating the State's

evidence failed to prove Farmer guilty beyond a reasonable doubt.

¶ 12 On October 21, 2008, the case returned to the trial court's docket for a hearing on Farmer's motion for a new trial. At that time, defense counsel explained he filed an original motion for a new trial on the day of the initial verdict, but asked to postpone the hearing so that he could obtain copies of a transcript from a hearing on a motion to suppress statements that took place prior to the trial. Counsel explained he attempted to secure the transcripts for years before he was informed the court reporter had died and the transcripts could not be located. The circuit court denied defendant's motion for a new trial on October 21, 2008. A timely notice of appeal was filed on November 19, 2008.

¶ 13 DISCUSSION

¶ 14 I. False Personation

¶ 15 Farmer first argues that his conviction for false personation must be vacated, because the statute violates the first and fourteenth amendments to the United States Constitution. U.S. Const., amends. I, XIV. Section 32–5.3 of the Criminal Code of 1961 (Code) provided[1]:

> "A person who falsely represents himself or herself to be the parent, legal guardian or other relation of a minor child to any public official, public employee, or elementary or secondary school employee or administrator commits a Class A misdemeanor." 720 ILCS 5/32–5.3 (West 2002).

Farmer contends that the statute is unconstitutionally overbroad and criminalizes constitutionally protected speech. Although defendant raises his constitutional claim for the first time in this appeal, the constitutionality of a criminal statute generally can be raised at any time. See *In re J.W.*, 204 Ill. 2d 50, 61 (2003). The constitutionality of a statute is a question of law, which we review *de novo*. *People v. McCarty*, 223 Ill. 2d 109, 135 (2006).

¶ 16 In considering a challenge to the constitutionality of a statute, we begin with the presumption that all statutes are constitutional. *People v. Waid*, 221 Ill. 2d 464, 480 (2006). If reasonably possible, a statute must be construed so as to affirm its constitutionality and validity. *People v. Greco*, 204 Ill. 2d 400, 406 (2003). The burden of rebutting that presumption is on the party challenging the law's validity. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 406 (2006). Accordingly, we will resolve any doubts as to the construction of a statute in favor of its validity. *People v. Dabbs*, 239 Ill. 2d 277, 292 (2010).

¶ 17 Generally, a person to whom a statute may be constitutionally applied is not allowed to challenge the statute solely on the grounds that it could, in another context, be applied unconstitutionally to another person. *People v. Williams*, 235 Ill. 2d 178, 199-200 (2009). The exception is in first amendment cases, where the concern that the constitutionally protected activity may be deterred or chilled allows a statute to be challenged as overbroad. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). However, this constitutional concern must be

---

[1]

The statute has since been repealed. See Pub. Act 96–1551 (eff. Mar. 10, 2011).

counterbalanced with the "substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech" or conduct. (Emphasis in original.) *Hicks*, 539 U.S. at 119. In order to maintain the appropriate balance, a statute's overbreadth must be "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." (Emphasis in original.) *United States v. Williams*, 553 U.S. 285, 292 (2008). Invalidating a statute for overbreadth is a strong step, not to be casually undertaken by a court. *Williams*, 553 U.S. at 293 (and cases cited therein). Thus, a statute is deemed overbroad only if it: (1) criminalizes a substantial amount of protected behavior, relative to the law's plainly legitimate sweep; and (2) is not susceptible to a limiting construction that avoids constitutional problems. *People v. Hill*, 333 Ill. App. 3d 783, 786 (2002). "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

¶ 18    When considering a claim of overbreadth, we must first determine whether the statute inhibits conduct protected by the first amendment. *Hill*, 333 Ill. App. 3d at 786. The first amendment provides that "Congress shall make no law *** abridging the freedom of speech." U.S. Const., amend. I. The parties do not dispute that the statute here "seek[s] to regulate 'only spoken words.' " *Broadrick*, 413 U.S. at 612 (quoting *Gooding v. Wilson*, 405 U.S. 518, 520 (1972)). Moreover, the statute targets words about a specific subject: family relationships to minors. The statute is thus a content-based regulation of speech.

¶ 19    Content-based speech restrictions ordinarily are subjected to strict scrutiny. See *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). However, an exception to the ordinary rule applies to "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). The first amendment does not include a freedom to disregard these traditional categories of unprotected speech. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992).

¶ 20    False statements of fact are often at the heart of the traditional categories of unprotected speech. *E.g.*, *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud."); *United States v. Dunnigan*, 507 U.S. 87, 96 (1993) ("[A] defendant's right to testify does not include a right to commit perjury."); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) (false statements in advertising are unprotected); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (libel). "The First Amendment requires that we protect some falsehood in order to protect speech that matters." *Gertz*, 418 U.S. at 341. Nevertheless, the State has a compelling interest in safeguarding minors; courts have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights, including the right to free speech. *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (and cases cited therein).

¶ 21    In this case, the statute criminalizes false representations that a person is the parent, legal guardian or other relation of a minor child to various public officials or employees. On one hand, family relationships are not ordinarily a matter of public interest or concern. On

the other hand, as Farmer notes, many such false statements of this sort lack the element of private or public injury that accompanies traditionally unprotected categories of speech like perjury or fraud. A neighbor may pretend to be a relative believing he or she is protecting a minor child from talking to an adult stranger, who turns out to be a plainclothes policeman or school teacher. Young people may colloquially refer to their friends as "brothers" or "cousins" in situations that are entirely innocent, just as old family friends may refer to their friends' children as nephews or nieces. Those in a charitable "Big Brother" program might innocently refer to their minor charges as "little brothers."

¶ 22    The State argues that these interests can be reconciled by placing a limiting construction on the statute, requiring that the false statement be given knowingly and with the intent of deceiving the relevant public official or employee. Farmer cites *People v. Madrigal*, 241 Ill. 2d 463 (2011), in which the Illinois Supreme Court rejected the State's request to read a mental state into a statute criminalizing innocent conduct under the rubric of identity theft. The supreme court applied the rule that a statute violates the due process clauses of both the Illinois and United States Constitutions if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state beyond mere knowledge. *Madrigal*, 241 Ill. 2d at 467. The identity theft statute at issue specified a mental state of mere knowledge, not criminal intent or knowledge. *Madrigal*, 241 Ill. 2d at 470. Thus, the supreme court could not substitute a culpable mental state for mere knowledge. In contrast, where a statute does not specify a mental state in the first instance, the court may read a culpable mental state into the statute. See *Madrigal*, 241 Ill. 2d at 474-75 (discussing *People v. Wright*, 194 Ill. 2d 1 (2000), and *People v. Tolliver*, 147 Ill. 2d 397 (1992)).

¶ 23    Here, the issue is first amendment overbreadth, not substantive due process. Moreover, section 32–5.3 of the Code does not specify a mental state and we are obliged to consider a limiting construction of the statute. *Broadrick*, 413 U.S. at 613; *Hill*, 333 Ill. App. 3d 783. The construction the State proposes advances the State's interest in protecting minors, while limiting the punishment of speech to cases where a person knowingly deceives a public official or employee to frustrate the operations of government in the protection of minors. Such an intent is similar to that required to prosecute obstruction of justice for knowingly furnishing false information to the police. See, *e.g.*, *People v. Childs*, 272 Ill. App. 3d 787, 789-90 (1995); *People v. Gerdes*, 173 Ill. App. 3d 1024, 1032 (1988). Given that limiting construction, section 32–5.3 of the Code is not unconstitutionally overbroad.

¶ 24    We note the jury in this case received no instruction reflecting the limiting construction to be placed on section 32–5.3 of the Code, as defense counsel raised the constitutional issue for the first time on appeal. However, errors in jury instructions are harmless if it is shown that the trial's result would not have been different had the jury been properly instructed. *People v. Pomykala*, 203 Ill. 2d 198, 210 (2003). "Because intent is a state of mind, it can rarely be proved by direct evidence" and can be shown by surrounding circumstances. *People v. Williams*, 165 Ill. 2d 51, 64 (1995). In this case, Farmer not only repeatedly lied to Officer O'Neal about his relationship with L.W., but also immediately fled the scene when Officer O'Neal suggested Farmer accompany him to the police station. Based on the record before us, we do not believe the jury's verdict would have been any different had it been instructed regarding the limiting construction we have given the statute. Thus,

any error is harmless and this court need not remand the case for a new trial.

¶ 25                                II. Ineffective Assistance of Counsel

¶ 26      Farmer also claims he was denied a fair trial because he was denied his sixth and fourteenth amendment rights to the effective assistance of counsel. Generally, in order to show ineffective assistance of counsel, a defendant must establish: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's alleged deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We must show great deference to the attorney's decisions, given a strong presumption that an attorney has acted adequately. *Strickland*, 466 U.S. at 689. A defendant must overcome the strong presumption the challenged action or inaction "might have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999) (and cases cited therein). Every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. To satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Thus, the prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show that counsel's deficient performance rendered the trial result unreliable or rendered the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). If a reviewing court finds that the defendant did not suffer prejudice, it need not decide whether counsel's performance was constitutionally deficient. *People v. Buss*, 187 Ill. 2d 144, 213 (1999).

¶ 27      Farmer argues that his trial counsel was ineffective because he repeatedly stated that Farmer was "not a saint," suggested that Farmer may have been engaged in other crimes (*e.g.*, retail theft or solicitation of prostitution), and elicited testimony that Farmer may have been under investigation for a felony sex crime. Farmer relies on *People v. Phillips*, 227 Ill. App. 3d 581, 590 (1992), where counsel's failure to object to hearsay linking the defendant to the crime was "devastating to defendant's case" and warranted a mistrial. In this case, counsel's suggestion that Farmer may have been involved in other crimes was largely intended to suggest an explanation for Farmer's flight from police. The unsolicited testimony elicited from Officer O'Neal that Farmer might have been under investigation for some felony sex crime may not have helped Farmer's case. Yet, the testimony was not particularly harmful either, as defense counsel then established no such outstanding complaint against Farmer existed.

¶ 28      Farmer also argues that counsel was ineffective by emphasizing that Farmer never claimed to be L.W.'s parent or guardian, while ignoring that the statute extends to any false representation of family relationship. Farmer claims counsel misapprehended the law and gave the jury no choice but to convict him. Farmer relies on *People v. Torres*, 209 Ill. App. 3d 314, 316 (1991), where counsel in an aggravated sexual assault case clearly

misunderstood what qualified as "penetration" under the applicable statute and mistakenly believed that the fact that defendant's family relation to the victim was a defense. In the record before us, counsel emphasized that Farmer never claimed to be L.W.'s parent or guardian, but also argued that Farmer's claim that L.W. was his cousin could have been merely colloquial.

¶ 29 In short, given the record on appeal presented, we conclude that Farmer's counsel's performance did not render the trial result unreliable or the proceeding fundamentally unfair. Rather, counsel's performance reflected a trial strategy suited to the evidence against Farmer. Indeed, given the strength of the evidence against Farmer in this case, we conclude there was no reasonable probability that counsel's performance in this case affected the result of the trial. Accordingly, Farmer's argument fails.

¶ 30                                    CONCLUSION

¶ 31 In sum, we conclude that section 32–5.3 of the Criminal Code of 1961 was not unconstitutionally overbroad in violation of the first and fourteenth amendments to the United States Constitution. We also conclude that Farmer did not receive ineffective assistance of counsel at trial. For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 32 Affirmed.